Fairmont Investment Co., Inc., a Corporation, Appellant, v. Fred C. Woermann, F. Ray Leimkuehler, Frank E. Lawrence, Howard V. Stephens and Edward W. Klorer, Constituting the Board of Adjustment of the City of St. Louis.—No. 40664.—210 S. W. (2d) 26.

Division One, March 8, 1948.

Rehearing Denied, April 12, 1948.

*Samuel H. Liberman* and *Gideon H. Schiller* for appellant.

*George L. Stemmler,* City Counselor, and *John P. McCammon,* Associate City Counselor, for respondents; *Thomas L. Anderson* of counsel.

CONKLING, J.—Upon this appeal it is contended by appellant, Fairmont Investment Company, that Section 20 of the zoning

ordinances of the City of St. Louis (Ordinance 35003 as amended by Ordinance 35009, both first effective in the year 1926) as applied to appellant's property by the Board of Adjustment, and by the circuit court in this cause in its judgment which affirmed the order of the Board, violates certain constitutional provisions.

Appellant owns the lot at the northwest corner of Maryland and Euclid in that city, upon which the ten story Fairmont Hotel is located. The hotel fronts on the north side of Maryland Avenue, and is seventy-seven feet back from the front property line. To the immediate west of the hotel is a brick wall eight or ten feet high and running out to the front property line, which wall separates the hotel property from the nine residences immediately west of the hotel and located in Maryland Place. Immediately west of the last of those nine residences is another such brick wall extending out to the front property line. Just west of that wall is a "non-conforming" business property also extending to the front property line on Maryland. Immediately west of that business property is Kingshighway. The front building line of the Fairmont Hotel and the nine residences coincide. The south side of Maryland Avenue, between Euclid and Kingshighway, is a solid block of stores and offices, commercial in use.

By the zoning ordinances the city is divided into "Use Districts" and "Height and Area Districts". There are five "Use" districts, (1) Residence, (2) Multiple Dwelling, (3) Commercial, (4) Industrial and (5) Unrestricted. Those ordinances likewise divide the city into five "Height and Area" districts, classified as "A", "B", "C", "D" and "E". Each property in the city is in both a "Use" and a "Height and Area" district.

Under the zoning ordinances appellant's hotel has been classified by the city as being in a "Commercial" Use District and in a "D" Height and Area District. The residences above mentioned have been classified as being in a "Residence" Use District and in an "A" Height and Area District.

Appellant applied to the city Building Commissioner for a permit authorizing it to erect on its premises, in front of and as an addition to the Fairmont Hotel, and extending out to the front property line on Maryland, certain additional structures for use as retail stores. It submitted conforming plans with its above mentioned application. That permit the Commissioner refused to issue because the submitted plan did not provide a front yard building line. From that order of the Commissioner denying such permit an appeal was taken to the Board of Adjustment. That Board, after hearing, in its order affirmed the ruling of the Commissioner denying the permit because the hotel, when constructed in 1923, "observed the building line that had been observed by all property to the west for a distance of more than six hundred feet (the nine residences), and to permit the erection

of the new structure out to the sidewalk line at the northwest corner of Maryland and Euclid would have the effect of vitiating the purposes of the zoning ordinances, i. e. the protection of property in the interest of promoting public safety, health, convenience, comfort, prosperity and general welfare as contemplated in Section Twenty (20) of Ordinance 35003 as amended by Ordinance 35009''.

At appellant's instance, and as provided by law in the enabling act, Mo. R. S. A. Sec. 7418, and in Ordinance 35003, certiorari was then issued out of the circuit court to review the above quoted order of the Board on the grounds hereinafter to be noticed.

In their return to the writ respondents contended that the finding and order of the Board, substantially in the words of Section 20 of the ordinance, was a proper and constitutional exercise of the Board's power. In their return respondents first put forward this further contention: That Ordinance 41414 amending subsection L of Section 15 of Ordinance 35003, as amended by Ordinance 35009, required that appellants observe a front yard building line in the use of their hotel property.

When the positions and contentions of the parties are analyzed and considered, this appeal, in fact, presents us but two questions. The two questions which rule the case are: (1) Has a front yard building line been imposed by the applicable ordinances upon a commercial use property located in a ''D'' Height and Area District? (2) If the ordinances impose no such building line, may the Board of Adjustment impose such a building line upon the theory that to do so would protect the general welfare? We hold that both questions just above stated must be answered in the negative.

Section 10 of the ordinance requires a front yard building line for property in any ''A'' Height and Area District; Section 11 makes the same requirement for property in any ''B'' Height and Area District and Section 12 makes the same requirement for property in any ''C'' Height and Area District. It is conceded, however, that, as to any ''D'' Height and Area property, covered by Section 13, the ordinance *does not* make any front yard building line requirement at all. The same is true of Section 14 which covers property in any ''E'' Height and Area District.

Section 15 of the ordinance captioned, ''Use, Height and Area Exceptions,'' provides, ''the *foregoing* requirements in the Use, Height and Area Districts shall be subject to the following exceptions and regulations'' (naming them). Subsection A lays down exceptions as to use; subsections B to E, inclusive, lay down exceptions as to Height and subsections F to M, inclusive, lay down exceptions as to Area.

Prior to its later amendment by Ordinance 41414, subsection L of Section 15 under consideration here, was as follows: ''A front yard shall not be required where the entire frontage of a street between

two (2) intersecting streets is *wholly within* a Commercial, Industrial or Unrestricted District''. (emphasis ours) The later amendment of subsection L by Ordinance 41414 merely struck from that subsection the word ''Commercial''.

However, it is noted that subsection L is within an ordinance section dealing solely with exceptions to the *"foregoing* requirements'', therefore, before it could have been applicable as to any particular property in any respect in issue here, of necessity there had to have been imposed, as to such property, a front yard building line, by virtue of a *"foregoing"* requirement. The plain purpose of subsection L was to exempt property already subject to the front yard building line requirement because of the preceding sections (10, 11 and 12) of the ordinance, from compliance with the requirement under the excepting circumstances of subsection L. Therefore, subsection L could apply only to property in ''A'', ''B'', or ''C'' Height and Area Districts. Either before or after the amendment subsection L applied to property only when in a block where the entire frontage of a street between two intersecting streets was wholly within a specified use district.

Recognizing the weakness of their above stated contention as to subsection L, respondents in their brief, say: '' . . . it is obvious that the (city) legislators thought they were imposing front yard restrictions on property such as relators. Possibly their efforts were inartful, but unquestionably that was their intent.'' We agree that the effort may have been inartful. But we hold that it does not even appear from the record before us that such was their intention. Had that been the intention, we cannot believe that any legislative body would have chosen so indirect and devious a method. The ordinance clearly required a front yard building line for property in ''A'', ''B'' and ''C'' Height and Area District. If it had been the desire or intention of the city legislators [29] to require a front yard building line as to property in a ''D'' Height and Area District they could have so easily amended the ordinance, in plain and simple terms, to have accomplished that result. They did not do so. Subsection L and its later amendment by Ordinance 41414 neither aids respondents nor supports their contention The ordinances simply do not require a front yard building line as to appellant's property, and we cannot write such requirement into any of the ordinances under consideration. Upon examination we find nothing in the zoning ordinances which requires the perpetual maintenance of the front yard building line which was established when any building was originally erected.

We come now to consider the second above stated question. While there can no longer be any question of the constitutionality in its general scope and purposes of the zoning ordinances of the City of St. Louis (See State ex rel. Oliver Cadillac Company v. Christo-

pher, 317 Mo. 1179, 298 S. W. 720, Taylor v. Schlemmer, 353 Mo. 687, 183 S. W. (2d) 913, 916), yet, when the courts consider the specific question of the applicability of those ordinances to particular property, the constitutionality must depend upon the facts of the particular case under consideration. Taylor v. Schlemmer, supra; Glencoe Lime & Cement Co. v. St. Louis, 311 Mo. 689, 108 S. W. (2d) 143; Village of Euclid v. Ambler Realty Company, 272 U. S. 365.

Neither the Board nor the circuit court was of the view that the zoning ordinances required appellant to observe a front yard building line, for neither based their instant ruling as to appellant's property upon any such requirement of the ordinance. Both based the instant ruling upon the following portion of Section 20 of the ordinance: "In interpreting and applying the provisions of this ordinance, they shall be held to the minimum requirements for the promotion of the public safety, health, convenience, comfort, prosperity and general welfare". The circuit court in toto affirmed the hereinabove quoted order of the Board. In so ruling both the Board and the circuit court wrote into Section 13, the requirement of the maintenance of a front yard building line by appellant on its "D" Height and Area property. In so doing they subjected appellant's property to a requirement above and beyond any requirement laid down in the ordinance itself.

Appellant contends that the refusal of the Commissioner and the Board to issue the requested permit denied appellant due process and equal protection in violation of the state and federal constitutions, because "all other property located in a 'D' Height and Area District may be improved without the necessity of (observing) a front yard building line whereas that right is denied relator"; that the ordinances do not confer on the Commissioner and the Board the authority "to refuse a permit in their discretion upon the ground that the particular proposed structure would be inconsistent with the purposes of the ordinance . . . and the general welfare"; that, if the ordinances are so construed, they "set up no uniform standards of guidance . . . are not applicable to all persons and property alike under the same circumstances, and are vague, uncertain and unreasonable," and are, therefore, as to appellant's property, void as denying due process and equal protection; that construed as did the court below, the ordinances are void "as an unlawful delegation of legislative power in violation of Article II of the Missouri Constitution". In addition to the Oliver Cadillac case and Taylor v. Schlemmer, supra, appellant relies on Glencoe Lime & Cement Co. v. St. Louis, supra; State ex rel. Triangle Fuel Co. v. Caulfield, 355 Mo. 330, 196 S. W. (2d) 296 and State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S. W. (2d) 1030, 1032.

Respondents contend the ordinance is valid and that the order of the Board was a proper exercise of the city's power. They cite the

statute (Sec. 7418), the above noted ordinances, the Nigro and the Oliver Cadillac cases.

Respondents rely upon the fact that subsection 5 of Section 16 of Ordinance 35003 purports to give the Board power "to vary [30] or modify the application of any of the regulations or provisions of this ordinance where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance so that the spirit of the ordinance shall be observed . . . and public safety and welfare secured and substantial justice done"; etc., yet we held in the Nigro case, supra, as to the power of a similar Board ·under a similar ordinance: "But the Board can in no case relieve from a substantial compliance with the ordinance; their administrative discretion is limited to the narrow compass of the statute; they cannot merely pick and choose as to the individuals of whom they will or will not require a strict compliance with the ordinance." In that case we further held: "The Board of Zoning appeals is intrusted with the duty of enforcing the provisions of the ordinance; it is an administrative body, without a vestige of legislative power. · It cannot therefore modify, amend or. repeal what the ordinance itself designates as its 'general rules and regulations'; the power to do that is conferred upon the Common Council of Kansas City, and it can delegate no part of that power". Here the ordinance purports to authorize the Board to vary or modify a provision of the ordinance. And that· was what the Board, in effect, did by rewriting, or construing Section 13 to include therein the requirement of a front yard building line, but it based its ruling in that respect upon the "general welfare" clause of Section 20. The Board had no power to so rewrite the ordinance by imposing such additional requirement. State ex rel. Nigro v. Kansas City, supra. In any event, the imposition of such an additional requirement is a different thing from a variance or modification to avoid "practical difficulties or unnecessary hardships."

In the Oliver Cadillac case, supra, we said (298 S. W. l. c. 726): "A zoning ordinance cannot permit administrative officers to pick and choose as to who may or who may not occupy a particular use district. If it is not to be condemned as a special law, or as one denying the equal protection of the laws, it must rest upon some rational basis of classification and apply alike to all persons and things falling within a designated class". The same is of course true as to a particular Height and Area District. No administrative officer may pick or choose as to who may or may not in a particular way use with area coverage the property classified by the city as within a certain Height and Area District. There must be a front yard building line observed by all property in a "D" Height and Area District, or it cannot be required that such building line be observed by any property in a "D" Height and Area District.

Such building line not being required by the ordinance of all "D" Height and Area property, it cannot be required of appellant's "D" Height and Area property.

In the application of the zoning ordinances to appellant's property, and appellant's request for the permit, we find no "practical difficulties or unnecessary hardships", within the contemplation of the statutes and Section 16 of the ordinance. The board was merely asked to authorize the Commissioner to issue the permit. Nothing within the zoning ordinances prohibits its issuance, and the Board was without power to attempt to legislate that the issuance of such permit would vitiate the purposes of the zoning ordinances and militate against the general welfare.

Appellant further contends the ordinance denies due process and equal protection because it fails to prescribe a uniform rule or set of standards to guide the Board in determining when a desired use in area coverage of a property promotes or fails to promote "the public safety, health, convenience, comfort, prosperity or general welfare."

In State ex rel. Triangle Fuel Co. v. Caulfield, supra, we recently considered a provision of the smoke ordinance of the city of St. Louis which authorized the Commissioner to refuse an application for a permit if he found the issuance, or the continuance, of a permit inconsistent with the public welfare. In there holding that the ordinance should have included within it a uniform set of standards and rule of action, we adopted the rule as tersely stated in 2 McQuillin on Municipal Corporations, [31] in these words: "Notwithstanding express power may exist to enact, the ordinance must provide a uniform rule of action; it must contain permanent legal provisions, operating generally and impartially, for its enforcement cannot be left to the will or unregulated discretion of the municipal authorities or any officer of the corporation". Authorities could be multiplied but would unduly burden this opinion.

The courts uniformly hold that proper restrictions upon the exercise of a police power are that such power be reasonably exercised, that it be certain, that it have uniformity of application in accordance with some standard contained within the ordinance itself, placed there by the legislative body of the municipality. The issuance of the permit to construct as proposed in appellant's application cannot be left to the uncontrolled discretion of a municipal board unmeasured by any reasonable test contained within the ordinance. Subsection 5 of Section 16 contains no uniform rule, or test or set of standards which satisfy the demands of the law in the above noted respect.

In any event, upon its face Section 20 of the ordinance, which is here relied on by the Board, and upon which it here based its order, is no more than a mere rule of interpretation and construction. Section

634

20 is not and does not purport to be any grant of authority to the Board to determine matters of policy, or to vary the plain provisions of the ordinance. It certainly is not any authority to the Board to make "fish" of one property and "fowl" of another, in any respect, where both are in the same Height and Area District. Nor can Section 20 be used as any excuse for the Board doing so.

It appearing neither that there is anything in the record before us authorizing the refusal of the permit, nor that the Board had any authority to find and enter the above quoted order, the judgment of the circuit court is reversed and the cause is remanded for proceedings in conformity with the views herein expressed. It is so ordered. All concur.