STATE of Missouri ex rel. David MAGIDSON and Berthilde Magidson, his Wife, Relators-Respondents.

v.

Walter E. HENZE, Building Commissioner, City of University City, Missouri, Respondent-Appellant.

No. 30523.

St. Louis Court of Appeals.

Missouri.

Jan. 17, 1961.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 14, 1961.

Marvin E. Boisseau and John J. Morris, University City, for appellant.

Husch, Eppenberger, Donohue, Elson & Jones, Dave L. Cornfield, Shulamith Simon, St. Louis, for respondents.

WOLFE, Judge.

This is an action in mandamus to compel the issuance of certain building permits by the Building Commissioner of University City. The person against whom the action was brought resigned as Building Commissioner, and his duly appointed successor, by his consent, in accordance with Civil Rule 52.12(g), V.A.M.R., has been substituted. After the Building Commissioner's return was filed to the alternative writ of mandamus, the parties at whose relation the writ was issued moved for a judgment on the pleadings. This motion was sustained and a peremptory writ issued. The Building Commissioner appealed.

The petition alleges that the petitioners owned certain lots in Wilson Square Subdivision in the City of University City. It alleges that they made application to the Building Commissioner for the issuance of building permits for the erection of single family dwellings, and that the application complied in all respects with the requirements of the ordinances of the City of University City.

The petition then alleges that the Commissioner refused to issue the permits on the ground that they were not approved by the Architectural Control Commission of the City of University City. This Architectural Control Commission, it is alleged, was created under the terms and conditions of Section 2013.4 of the University City Zoning Code, which is as follows:

"(1) *Intent and Purpose.* The intent and purpose of this section is to maintain compatibility in the exterior design and appearance of principal buildings erected within the City, so as to avoid conditions which may adversely affect the desirability of immediate and neighboring areas, and by so doing, impair the benefits of occupancy of existing buildings and property in such areas, impair the stability and value of both improved and unimproved real property, prevent the most appropriate use of areas with attendant deterioration of conditions affecting the health, safety and morals of the inhabitants thereof, deprive the City of tax revenue which it could otherwise receive, and destroy a proper balance in relationship between the taxable value of real property in various areas and the cost of municipal services provided therefor; and it is the purpose of this Section to prevent these and other harmful effects of repetitious or unsightly outward appearance in

the exterior design of buildings erected in the same vicinity, and thus to promote and protect the health, safety, morals and general welfare of the community.

"(2) *Architectural Control Commission.* There is hereby established a Commission to be known as the Architectural Control Commission, consisting of three members, all of whom shall be residents of the City, two of whom shall be Registered Architects, including within the term Landscape Architects, selected from a panel of not less than five, established from time to time by resolution of the City Council. They shall be appointed for terms of three years each, except that of those first appointed, one shall serve for a term of one year, one for a term of two years and one for a term of three years. Appointments to fill vacancies shall be for the unexpired term.

"Said Commission is hereby vested with the following jurisdiction and authority:

"a.) *Powers, Duties, Procedure.* All applications for Building Permits for any principal building within the City, filed with the Building Commissioner, shall be referred to said Commission before a building permit is issued. It shall be the duty of the Commission to examine the plans for said proposed building, particularly with reference to the exterior design thereof and shall approve or disapprove the same. In making its determinations, the Commission shall be guided by the intent and purpose of this Section and shall approve the plans for said buildings, provided it finds that they are in harmony with and will promote compatible architectural design in the same vicinity and thus promote and protect the health, safety, morals and general welfare of the community. The Commission may, if it desires, hear the applicant for the building permit in question and the owner of the lot upon which it is proposed to erect the structure in question, together with any other persons, either residents or property owners, desiring to be heard, giving such notice of the hearing as they may deem sufficient. Should the Commission disapprove the plans of the applicant, it shall be its duty to suggest to the applicant any alteration in the design or plan of said building which will make it comply with the conditions necessary for approval, and shall then approve the same in the event such alterations and changes are made by the applicant. The Commission shall note upon the plans in writing, its approval or disapproval of the design of such building and no permit shall be issued therefor by the Building Commissioner unless the plans have the approval of the Commission.

"b.) *Meetings.* Said Commission shall meet at the call of the Chairman, elected from among the appointed membership of the Commission, and shall pass upon all applications then pending with the Building Commissioner. Said meetings or hearings conducted by the Commission may be adjourned from time to time, but for not more than forty-eight hours, and within forty-eight hours after the close of the meeting or hearing, the Commission shall in writing approve or disapprove the plans submitted by the applicant and shall so notify the Building Commissioner. All decisions shall be made by a majority of the members thereof and two members shall constitute a quorum at any meeting or public hearing."

It is alleged that the provisions of Section 2013.4 are invalid, illegal, and void, in that they are in excess of the powers granted by statute, and that the City of University City was without authority to enact that section.

It is further alleged that it is vague and provides no standard and no uniform rule by which to guide the actions of the purported Architectural Control Commission, and that the section is unconstitutional. The petition concludes with a prayer that the Building Commissioner be ordered to issue building permits.

The Building Commissioner's return admitted that the petitioners were the owners of the property and that he was the Building Commissioner of University City. It

also admits that the ordinance of University City contained the provisions relating to the erection of buildings and structures set forth in the petition. It denies that the application for the building permits complied with the ordinance of University City in that the plans failed to meet with the Architectural Control Commission's approval, and pleads by reference the report of the Architectural Control Commission upon the applications made, which report is as follows:

"To The Building Commissioner Of The City Of University City.

"Re: Application of Mr. David Magidson for permits to build four houses on lots 7, 8, 9, 10 on Wilson Avenue as per description furnished to the Architectural Control Commission on Saturday, June 6, 1959.

"Dear Sir:

"The Commission disapproves the plans of these four houses. Comments and suggestions follow:

"The plan for two of these houses (lots 7 and 8) comprises an area of 798 sq. ft. (19' x 42'). The plan for two of these houses (lots 9 and 10) comprises an area of 984 sq. ft. (24' x 41'). Existing houses in this neighborhood are from approximately 1200 to 1400 sq. ft. in area. Reference is here made to the Low Rent Housing Manual HHFA–PHA March 1958 which sets forth the minimum area for one story 2 bedroom houses as 740 sq. ft. and for 3 bedroom houses at 920 sq. ft.

"The proposed plan for each of the 2 bedroom houses provides bedrooms 102 sq. ft. in area (8' 5½" x 12' 0"). The largest bedroom in the 3 bedroom house is 110 sq. ft. Reference is here made to the 'Low Rent Housing Manual HHFA–PHA March 1958' which sets forth minimum bedroom requirements for two and three bedroom houses as, 1st bedroom 124 s. f. and 2nd bedroom 100 s. f. Minimum requirements as per Minimum Property Standards for one and two living units F.H.A. November 1, 1958 and July 1, 1959, are as follows: 2 bedroom total 200 sq. ft. with minimum for one room of 80 sq. ft.; 3 bedroom total 280 sq. ft. with minimum for any one room of 80 sq. ft.

"The above information referring to areas indicates the nearly minimum standard living areas contained in the plans of these proposed houses.

"The neighborhood in which it is proposed to build these houses is substantially built up with attractive and well kept houses and grounds, near the senior high school and the new indoor swimming pool, and within easy walking distance of Heman Park. In considering the existing character of this neighborhood, the Commission is of the opinion that houses of the character proposed in these plans are not in harmony with and will not contribute to nor protect the general welfare of this neighborhood."

As stated, upon the return being filed, the petitioners moved for a judgment on the pleadings, and the motion was sustained.

■ We are confronted with the fact that there was raised in the petition a question of the constitutionality of the ordinance, set out above. By virtue of Article 5, Section 3 of the Constitution of Missouri, V.A.M.S., our Supreme Court has exclusive appellate jurisdiction in all cases involving the *construction* of the Constitution. We are therefore obliged to determine whether or not the case is within our jurisdiction.

The Circuit Court, in passing upon the motion for a judgment on the pleadings, merely sustained that motion without stating that it did so upon any constitutional grounds. It may well have done so upon the ground that the ordinance was in excess of the authority granted by statute to the city. If such was the case, then this appeal involves nothing more than a construction of the applicable statute, and the appeal is properly before us. In Juengel v. City of Glendale, Mo.Sup., 161 S.W.2d 408, loc. cit. 409, the Supreme Court of Missouri

discussed its jurisdiction where the validity of an ordinance was concerned, stating:

"As applied to the validity of a city ordinance challenged on several grounds, including constitutional, it must appear from the record that a constitutional construction of the ordinance was essential to a determination of the case or that the Constitution was invoked and was passed on by the court."

It appears that this case can be ruled upon the question of the city's statutory authority to enact such a zoning ordinance, so appellate jurisdiction is in this court.

■ The first point raised is that mandamus will not lie because the Building Commissioner is not charged with the duty to issue a permit. We are here dealing with pleadings alone. It is obvious from them that the only reason for a refusal to issue the permit was that the Architectural Control Commission disapproved the plans. The appellant cites us to 55 C.J.S. Mandamus § 64, p. 104, where it is stated:

"Mandamus will not issue to compel the observance of law generally but may issue to enforce only clear legal acts and duties, acts and duties which are clearly, specifically, and peremptorily enjoined by law, either expressly or by clear and reasonable inference from the law, that is, the person, officer, board, or tribunal sought to be coerced must be under a clear and imperative legal obligation or duty to perform the particular act sought to be enforced, the performance of which the court may order in definite terms, and enforce if necessary."

More to the point, however, is the statement (55 C.J.S. Mandamus § 156, p. 302), which reads: " * * * mandamus may lie where the refusal of a permit is based on a zoning ordinance which is inapplicable or which is invalid."

This is the rule in Missouri, and we therefore hold that the relator pursued the proper remedy. State ex rel. Kramer v. Schwartz, 336 Mo. 932, 82 S.W.2d 63; State ex rel. Triangle Fuel Co. v. Caulfield, 355 Mo. 330, 196 S.W.2d 296; State ex rel. Continental Oil Co. v. Waddill, Mo.Sup., 318 S.W.2d 281.

■ The sole remaining question is whether or not the ordinance is valid. Zoning ordinances and building regulations constitute the exercise of a governmental function referable to the police power. State ex rel. Sims v. Eckhardt, Mo.Sup., 322 S.W.2d 903; Fleming v. Moore Brothers Realty Co., 363 Mo. 305, 251 S.W.2d 8. The city has no inherent police powers (Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70), so we must look to the statutes to determine the extent of the power granted by the State to the city. The applicable statute is Section 89.020, RSMo 1949, V.A.M.S., which is as follows:

"For the purpose of promoting health, safety, morals or the general welfare of the community, the legislative body of all cities, towns, and villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, the preservation of features of historical significance, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

■ It is quite obvious that the above section does not grant to the city the right to impose upon the land owner aesthetic standards for the buildings he chooses to erect. City of St. Louis v. Friedman, 358 Mo. 681, 216 S.W.2d 475. This is what was attempted by the city through the ordinance it enacted. It is also established that the statutory grant is to the legislative body of the city and cannot be delegated to an Architectural Control Commission.

State ex rel. Ludlow v. Guffey, Mo.Sup., 306 S.W.2d 552; State ex rel. Croy v. City of Raytown, Mo.App., 289 S.W.2d 153.

For the reasons stated the ordinance is void, but there could be added a further reason. It lacks "uniformity of application" in accordance with some standard contained within the ordinance itself. Fairmont Inv. Co. v. Woermann, 357 Mo. 625, 210 S.W.2d 26, loc. cit. 31.

The court properly ordered a peremptory writ of mandamus to issue, and its judgment is affirmed.

ANDERSON, P. J., and O. P. OWEN, Special Judge, concur.