STATE of Missouri ex rel. Eugene SHERI-DAN, Ray Pisarek, Frank O'Neil, James Longinette, James F. Taylor, Harvey Bohley, Pete Goode, Paul Smith, Paul J. Leone, Homer Huggins, Donald N. Meiners, Individually and for the Benefit of the Other Members of the Normandy Lakewood Improvement Association, Relators-Appellants,

v.

William E. HUDSON, Harry Gautsche, William H. Schaefer, Warren E. Daniels and Arnold Dominquez, as Members of the Board of Adjustment of the Town of Normandy, Missouri, and Zefferino Gavasto and Julia Gavasto, Respondents.

No. 32230.

St. Louis Court of Appeals.

Missouri.

Feb. 15, 1966.

Donald Williams, Francis J. Nolan, St. Louis, for relators-appellant.

Ferrara & Mulligan, John E. Bardgett, St. Louis, for respondents.

DOERNER, Commissioner.

This is an appeal from a judgment of the Circuit Court of St. Louis County rendered in a certiorari proceeding brought to review the action of the Board of Adjustment of the Town of Normandy. The judgment upheld the Board's order and relators, who are neighboring property owners, brought this appeal.

In view of the conclusion we have reached regarding the extent of the power granted to the Board of Adjustment by that part of Normandy's zoning ordinance on which the Board relied, only a brief statement of the facts is necessary. Normandy enacted its zoning ordinance in 1946, pursuant to the police power delegated to its Board of Trustees, its legislative body, by Section 89.020, et seq., RSMo 1959, V.A.M.S. That legislation is frequently referred to as the Enabling Act. Section 89.080 of the Act reads, in part:

"Such local legislative body shall provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted pursuant to the authority of sections 89.010 to 89.140 may provide that the said board of adjustment may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained."

Section 89.090 specifies the board's powers, including the following:

"(3) In passing upon appeals, where there are practical difficulties or unnecessary hardship in the way of carry-out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall

be observed, public safety and welfare secured and substantial justice done."

In accordance with Sections 89.080 and 89.090 the zoning ordinance of Normandy, in Article XIII, creates a Board of Adjustment and empowers it to hear and decide appeals from an administrative official. Paragraph 7 of Section 4 of that article clothes the Board with the following power:

"To authorize upon appeal whenever a property owner can show that a strict application of the terms of this ordinance relating to the use, construction or alteration of buildings or structures or the use of land will impose upon him unusual practical difficulties or particular hardship, such variations of the strict application of the terms of this Ordinance as are in harmony with its general purpose and intent but only when the Board is satisfied that a granting of such variation will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficulty so great as to warrant a variation from the comprehensive plan as established by the Ordinance, and at the same time the surrounding property will be properly protected."

Respondents Zefferino Gavasto and Julia Gavasto are the owners of a pie-shape tract of land in Normandy, consisting of about 5 acres. The only access to their property is by a narrow unpaved lane, called Half Street, approximately 1500 feet long, which was dedicated but not accepted because it did not meet the minimum width required for a street. Gavasto's land, which they have owned since 1932, is in the Class B, single family residential district, as established by the Normandy zoning ordinance. Since 1962 they have been attempting to obtain permission to build six 8-family apartment buildings on an area comprising 1.886 acres of their property. Failing in their efforts to have the Board of Trustees rezone the 1.886 acres, and acting on a suggestion made by the Board of Ad-

justment in an appeal of doubtful legality from the Board of Trustees, they subsequently applied to the Building Commissioner for a permit to construct the apartment buildings. Upon his refusal to issue the permit they appealed to the Board of Adjustment. After notice and a full hearing, the Board on April 25, 1963 ordered the Building Commissioner to issue the permit to the Gavastos, conditioned upon their widening, paving and lighting Half Street. In its order the Board of Adjustment cited Paragraph 7 of Section 4, Article XIII as the authority for its action. Relators, who reside in a single family residential subdivision which adjoins the southern boundary of Gavasto's 5 acre tract, instituted this proceeding in the Circuit Court to invalidate the Board's order. After a trial, in which both sides introduced additional evidence, the court by general terms in its judgment affirmed the Board's order of April 25, 1963. Relators then brought this appeal.

The bases upon which the Gavastos sought the permit to construct the apartment buildings were that there were practical difficulties which precluded their use of the 1.886 acres for single family residences, and that to deny them the right to use their land for multiple dwellings imposed an unnecessary hardship on them. Taking into account the evidence regarding the landlocked situation of the 1.886 acres; the topography of the entire tract, which makes it economically possible to use only the 1.886 acres of the 5 acres as building sites; the excessive cost of providing an acceptable road and the prohibitive share of such cost which would have to be allocated to each of the 8 residential lots into which the 1.886 acres could be subdivided; the proximity of Interstate Highway 70, which bounds the land on one side, and that of the right-of-way of the Wabash Railroad, which bounds it on the other; the existence of other multiple dwellings in the general area involved; and the expert opinion submitted that it would be economically unfeasible to use the 1.886 acres for single

family residences and that their use for multiple dwellings would not adversely affect the property of relators, we are of the opinion that from the factual standpoint the Board of Adjustment, and the court, were amply justified in granting the Gavastos the right to use their property for a nonconforming use, that is, a use other than that for which it was zoned. We reach this conclusion, as did both the Board and the court, because of the obvious practical difficulties which prevent them from economically using it for single family dwellings, and because to deny them the right to use it for multiple dwellings would be tantamount to a taking or confiscation in the constitutional sense. Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833.

■ The scope of our review, however, is not limited to the determination of whether there was sufficient competent and substantial evidence to support the order of the Board and the judgment of the court. A much more serious and difficult question is presented, that of the extent of the power granted to the Board of Adjustment by the pertinent part of the Normandy zoning ordinance on which the Board relied. In that connection, a comparison of Paragraph (3) of Section 89.090, subd. 1 and Paragraph 7 of Section 4, Article XIII of the Normandy ordinance reveals some deficiencies in the latter. Both empower the Board to grant a variance as to the use of land when a practical difficulty or unnecessary hardship precludes its use for the purpose for which it is zoned by the ordinance. But all of the standards which are specified in the statute as to when such a variance may be permitted do not appear in the Normandy ordinance. Thus, the statute requires the Board to find, in addition to the existence of a practical difficulty or an unnecessary hardship, that in granting the variance (1) " * * * the spirit of the ordinance shall be observed"; (2) "public safety and welfare secured"; and (3) "substantial justice done." All that can be gleaned from the awkward construction of Paragraph 7 of

Section 4, Article XIII of the ordinance is that the Board (1) must be satisfied that the variation is in harmony with the general purpose and intent of the zoning ordinance; and (2) must find that " * * * the surrounding property will be properly protected." The first test under the statute might be equated with the first under the ordinance, but in other respects the deficiency of the ordinance is apparent. For our purpose the ordinance must be read and construed in connection with the Enabling Act; the former, if in any respect inconsistent with the latter, is to that extent a nullity. State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030. Accordingly, Paragraph 7 of Section 4, Article XIII of the Normandy ordinance must be reconciled with the statute and considered as containing those tests and standards specified in Section 89.090, subd. 1(3).

The courts in other jurisdictions have been called upon on numerous occasions to consider the validity of the provisions in zoning laws permitting variances, in language substantially similar to that contained in the Normandy ordinance. As is pointed out in an exhaustive review of the cases in Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244, there is a decided conflict in the decisions. One line of cases holds that in the absence of any standard or test as to what constitutes a practical difficulty or an unnecessary hardship, the ordinance constitutes an attempt to delegate legislative authority to the Board of Adjustment, and therefore is unconstitutional. Welton v. Hamilton, 344 Ill. 82, 176 N.E. 333. In other states it has been held that the board of adjustment may grant a variance as to a minor requirement, such as a height or side yard regulation, but that its powers do not include that of authorizing a nonconforming use. Nicolai v. Board of Adjustment of City of Tucson, 55 Ariz. 283, 101 P.2d 199. A third group holds that the ordinance contains sufficient standards and rules for the guidance of the board of adjustment, and is constitutional; that such a board serves in an administrative or quasi-ju-

dicial capacity; and that it is empowered to authorize a nonconforming use when a particular difficulty or unnecessary hardship is shown to exist which is peculiar to the owner, and, in most cases, borders on confiscation; and the standards otherwise established are met. Nelson v. Donaldson, supra. The writer of that opinion, as well as the text writers, indicate that the majority of courts adhere to the last view. Yokley, Zoning Law and Practice, 3rd Ed., Vol. 2, § 15–8, p. 151; Metzenbaum, Law of Zoning, 2nd Ed., Vol. 1, Ch. IX–b, p. 670; McQuillin, Municipal Corporations, Vol. 8, § 25.161, p. 374. McQuillin, supra, § 25.160, p. 370, defines the purpose of a variance as follows:

" * * * The fundamental purpose of variances is to afford a safety valve against individual hardships, to provide relief against unnecessary and unjust invasions of the right of private property, to provide a flexibility of procedure necessary to the protection of constitutional rights, and to keep the law 'running on an even keel.' * * * "

Another writer describes its purpose to be: "* * * A variance is designed as an escape hatch from the literal terms of an ordinance which, if strictly applied, would deny a property owner all beneficial use of his land and thus amount to confiscation." Lincourt v. Zoning Board of Review of Warwick, R.I., 201 A.2d 482, 483, 485–486.

■ The basis of our Missouri Enabling Act is a " * * * 'standard enabling act.' * * * " prepared by a commission appointed by the Secretary of Commerce of the United States, and adopted in many states besides our own. State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S.W. 720, 725. The nature and extent of the powers granted to a board of adjustment by Section 89.090, subd. 1(3) and a municipal ordinance enacted pursuant to our Enabling Act was first considered by our Supreme Court in the landmark case of State ex rel. Nigro v. Kansas City,

325 Mo. 95, 27 S.W.2d 1030. The language of the ordinance under consideration in that case is substantially the same as that contained in Section 89.090, subd. I(3). Regarding the powers of the board of adjustment (named the Board of Zoning Appeals in Kansas City) to grant a variance for a nonconforming use the court said (27 S.W. 2d 1032):

" * * * The board of zoning appeals is intrusted with the duty of enforcing the provisions of the ordinance; it is an administrative body, without a vestige of legislative power. It cannot therefore modify, amend, or repeal what the ordinance itself designates as its 'general rules and regulations'; the power to do that is conferred upon the common council of Kansas City, and it can delegate no part of that power."

Obviously, by Section 7 of the Enabling Act, now Section 89.090, the power and authority to grant a variance of some kind was thereby given to the board of adjustment, otherwise the section would be a nullity. The extent of that power, as delineated by the court, was as follows:

" * * * The ordinance does not purport to authorize the board of zoning appeals to modify, amend, or repeal any of its provisions; but it does permit and direct the board to modify or partially suspend a rule in its application to a particular case where strict enforcement would 'by reason of exceptional circumstances or surroundings constitute a practical difficulty or unnecessary hardship.' This provision must be read in connection with section 7 of the Enabling Act, which provides that the board of adjustment shall have the power, 'where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures

or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.' In other words, if in a specific case the enforcement of a regulation according to its strict letter would cause unnecessary hardship and the board can by varying or modifying the application of the regulation obviate the hardship and at the same time fully effectuate the spirit and purpose of the ordinance, they are authorized to so vary or modify the application."

That passage would indicate that the court interpreted the ordinance and Section 89.090, subd. 1(3) as empowering the board to grant a minor variance, which are regarded in some quarters as "exceptions" rather than "variances." Yokley, supra, Sec. 15-4, p. 138; Metzenbaum, Ch. IX-f-2-(b), p. 813. In any event, the court was emphatic in its view that the board's power did not extend to the extent of granting a variance for a non-conforming use, for it concluded:

" * * * But the board can in no case relieve from a substantial compliance with the ordinance; their administrative discretion is limited to the narrow compass of the statute; they cannot merely pick and choose as to the individuals of whom they will or will not require a strict compliance with the ordinance. State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 1196, 298 S.W. 720."

It is true that in that case there was no showing of a practical difficulty or an unnecessary hardship which justified the grant of a variance for a nonconforming use. But the Supreme Court did not limit its decision to a denial of the landowner's right to a variance under the circumstances shown. Its language, that " * * * the board can *in no case* relieve from a substantial compliance with the ordinance * * *" (Emphasis ours.), clearly shows that it was holding that regardless of the practical difficulty or unnecessary hardship

which might exist, a board of adjustment does not possess the power to grant a variance for a nonconforming use. That construction of the opinion has been placed on it by our courts of appeals, as well as by courts of other jurisdictions. Adams v. Board of Zoning Adjustment of Kansas City, Mo.App., 241 S.W.2d 35; Nelson v. Donaldson, supra; Nicolai v. Board of Adjustment of City of Tucson, supra.

■ In the light of the Supreme Court's decision in State ex rel. Nigro v. Kansas City, which we are required to follow, Art. V, Sec. 2, Const.Mo., V.A.M.S., we are constrained to hold that the Board of Adjustment of Normandy had no power to grant the Gavastos a variance for a nonconforming use of their property, and that its order directing the Building Commissioner to issue them a permit for the construction of the apartment buildings on their land was beyond the Board's authority and void.

No point has been raised by the relators regarding the constitutionality of the Normandy ordinance, and the Supreme Court's decision in State ex rel. Nigro v. Kansas City, supra, was reached without any treatment of the constitutional question. Because the issue was not raised, and because of the constitutional limitations on our jurisdiction, Art. V, Sec. 3, that question is not before us. We merely note, in passing, that in Fairmont Inv. Co. v. Woermann, 357 Mo. 625, 210 S.W.2d 26, a similar ordinance of the City of St. Louis was held void on the grounds that there were not prescribed therein uniform standards or tests which imposed proper restrictions on the exercise of the police power granted to the Board of Adjustment; and that the court's view of the constitutional invalidity of the ordinance as expressed in Fairmont Inv. Co. v. Woermann, supra, was confirmed in the relatively recent case of State ex rel. Ludlow v. Guffey, Mo., 306 S.W.2d 552, an en banc decision.

It appearing that the Normandy Board of Adjustment had no authority to grant a

variance for a nonconforming use, and that its order of April 25, 1963 directing the Building Commissioner to issue to the respondents a building permit for the construction of apartment buildings is therefore void, the judgment of the circuit court is reversed and the cause is remanded for proceedings in conformity with the view herein expressed.

PER CURIAM.

The foregoing opinion of DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and the cause remanded for proceedings in conformity with the view herein expressed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.