**STATE** of Missouri ex rel. **Raymond W. RABENAU, Lawrence J. O'Donnell, Joseph A. Degenhardt, Trustees of Cordington Heights Subdivision, Harold Dressel and Sarah N. Dressel, Relators-Respondents,**

v.

**Reis V. BECKEMEIER, Donald A. Beimdiek, William W. Schweikert, in their Capacity as Members of and Constituting the Board of Zoning Adjustment of St. Louis County, Respondents,**

**Bernard H. Dorenkamp, Intervenor-Appellant.**

**No. 33130.**

St. Louis Court of Appeals.

Missouri.

Nov. 19, 1968.

Motion for Rehearing or to Transfer to the Supreme Court Denied Dec. 18, 1968.

Application to Transfer Denied Feb. 10, 1969.

Frank Bild, St. Louis, Mo., for relators-respondents.

Louis S. Czech, Clayton, for intervenor-appellant.

Joseph B. Moore, County Counselor, and Patrick M. Fiandaca, III, Asst. County Counselor, Clayton, for respondents.

DOERNER, Commissioner.

This appeal involves a variance granted by the St. Louis County Board of Zoning Adjustment to Bernard H. Dorenkamp from the building or set-back lines established by law for the major highways in that county. By certiorari, in which Dorenkamp was permitted to intervene, the respondents sought and obtained a review of the Board's decision by the Circuit Court. The court reversed the decision of the Board, from which Dorenkamp brought this appeal.

Dorenkamp was in the business of developing subdivisions, and prior to the one under consideration had developed two other subdivisions. In December, 1965 he sought to subdivide a tract of land he owned fronting on Sappington Road, in St. Louis County, which subdivision was named Seneca Estates. On his behalf his engineer prepared and submitted a preliminary plat of Seneca Estates to the Planning Commission, on which plat the building or set-back line from the edge of Sappington Road was shown as 30 feet. The plan for major highways in effect for St. Louis County provided that the set-back line for buildings on major highways, including Sappington Road, was 40 feet from the edge of the road. The Planning Commission refused to approve the preliminary plat, presumably because it failed to comply with the set-back requirements for major highways, but whether Dorenkamp learned of the reason for the Commission's rejection is not clear from the record. He then submitted a revised plat of the proposed subdivision which specified a 40 foot set-back line. The Planning Commission approved that revised plan on December 13, 1965, and it was filed with the Recorder of Deeds on January 3, 1966.

Shortly thereafter Dorenkamp sought to effect a change of the set-back line from 40 to 20 feet, because the prospective purchasers for the improvements to be constructed on Lot 20, a corner lot, wanted the house to face Tioga Drive rather than Sappington Road, and the contemplated house and attached garage could not be so built unless the set-back line was changed. He consulted Edward P. Walton, Deputy Zoning Enforcement Officer of St. Louis County, and inquired as to what procedure had to be followed to change the set-back line. Walton, who appeared as a witness for Dorenkamp at the hearing before the

Board of Zoning Adjustment, testified that when Dorenkamp consulted him he examined the zoning map and found that the tract was in the R–2 Density District, in which a set-back line of only 20 feet was required. Walton freely admitted that he failed to check the set-back line for Sappington Road established by the major highway plan, and related that he informed Dorenkamp the change could be effected by the filing of record of an instrument amending the approved plat. Dorenkamp then went to "my title company" (unnamed) and had a George Benson prepare an instrument changing the set-back line on Sappington to 20 feet, obtained its approval by the owners of the relatively few lots in the subdivision which he had theretofore sold, and filed it with the Recorder of Deeds on February 21, 1966.

About six months later, on August 20, 1966, Dorenkamp entered into a sales contract with a couple named Toenges for the sale of Lot 20, together with a house and attached garage to be built thereon, contingent upon the sale by the Toenges of the home they then owned. On March 8, 1967, almost seven months after the date of the sales contract, Dorenkamp applied for and was granted a building permit to construct a house on Lot 20, facing Tioga Drive, with the attached garage opening towards Sappington Road and 20 feet distant from the edge of that road, all as shown by a plot plan filed with the application. Walton testified that he wrote up the application for Dorenkamp and issued the permit as Deputy Zoning Enforcement Officer, but apparently he again failed to check the set-back requirements of the major highway plan. Dorenkamp testified that, "After the issuance of a building permit" on March 8, 1967, he began construction of the improvements, but the precise date on which work was begun was not stated. According to Dorenkamp, the excavation was dug and the concrete foundation poured, and then the project " * * * sat like that for about two weeks * * *." Thereafter the subfloor was installed, the framing for the wall sections of the house

and the garage were erected, the roof was put on, and about half of the brick veneer facing was completed when he received a stop order from the County's Field Inspector to cease work on the garage because its location was in violation of the set-back line on major highways.

Raymond W. Rabenau, one of the respondent trustees of Cordington Heights, the back of which borders that of Seneca Estates, testified that he saw the foundation for the house, and that at that time it was in line with "the other building," by which we understand he referred to a house directly across Tioga Drive that was located at least 40 feet from Sappington Road. At that time, according to Rabenau, the area where the garage was later located was graded smooth and no foundation for the garage had been poured. About March 22 or 23, 1967, he first noticed that a garage was being erected on the Sappington side of the house, within about 15 feet of the edge of the road as he judged the distance. On March 27, 1967 he went to the County Courthouse, talked to Walton, and asked to see the plot plan. Walton told him on that day he could find nothing and had no record of a building permit having been issued on that lot. Walton said he would check further, and advised Rabenau to call back the next day. Rabenau did not do so, however, because he heard that another resident in his subdivision, named Elhart, had talked to the County Field Inspector and had been informed by the latter that the garage was over the building line. He did, however, go back to the County Courthouse the following day, March 29, but " * * * that same day I couldn't find nothing * * *" and he then contacted his counsel and requested him to investigate.

Walton made no denial and offered no explanation concerning Rabenau's testimony of his inability on March 27 to locate any record of the issuance of the building permit. He did testify that after the complaint was filed he sent an inspector to the lot in question and " * * * at the time

he (Rabenau) claimed, I think, nineteen feet or fifteen feet from the street or something like that at the time inspection was made. * * *" Walton then called Dorenkamp and requested him to have a spot survey made, because at the time Walton thought it might be a matter of a discrepancy of inches or one foot and he wanted a survey showing exactly where the improvements were located on the lot. Dorenkamp then had R. M. Harrison, a licensed surveyor, make a survey and the plat prepared by him shows that the garage was set back only about 20½ feet from the edge of Sappington Road. The exact date on which the stop order was issued is not clear from the record, but Dorenkamp's recollection was that it was on April 6 or the first part of April.

After the issuance of the order stopping work on the garage Dorenkamp filed a petition with the Board of Zoning Adjustment. The date on which it was filed does not appear in the Board's record before us, nor is the petition included in that record. We gather, however, that what Dorenkamp requested was a variance from the set-back requirements of the major highway plan, in order that he might complete the construction of the attached garage at the set-back line shown on the Harrison survey. After public notice of the filing of the petition and the date on which it would be heard had been given, the Board held a hearing on April 14, 1967, at the conclusion of which the matter was taken under submission. The minutes of the Board's meeting of May 12, 1967 show the action taken and ground upon which it was based:

"Mr. Schweikert made a motion that the petition of Mr. Bernard H. Dorenkamp requesting a variation of the set-back line on Sappington Road for Lot #20 of the Seneca Estates Subdivision to permit completion of a structure fifty feet from the center line of Sappington Road, instead of seventy feet from Sappington Road as established by the Building and Set-Back Line Regulations along major highways in St. Louis County be granted.

He moved that the Board find that construction was started persuant (sic) to a building permit, issued by the Director of Public Works of St. Louis County and the plans submitted at the time application was made for a permit showed a set-back line of fifty feet. The basis for said motion being Section 24.07E of Ordinance #15 of the St. Louis County, adopted February 9, 1951, which permits a variation of the requirements because of practical difficulties on (sic) unnecessary hardship due to other conditions, providing such variation will not seriously affect any ajoining (sic) property or the general welfare. He moved that the Board find that the issuance of the building permit and the reliance thereon is such a condition that should afford the petitioner relief. He further moved that the Board find that the variation will not seriously affect the ajoining (sic) property or the general welfare of St. Louis County and noted for the record that the protestants are not ajoining (sic) property owners. "Mr. Beimdiek seconded the motion and called for a vote. Mr. Schweikert and Mr. Beimdiek voted for approval of this petition and Mr. Beckemeier voted against it. "Mr. Beckemeier stated his reasons as such, 'I am opposed to this motion because the petitioner has not shown to my satisfaction that the relief he requests is not due to conditions that are inherant (sic) in the land but really conditions that are personal to the owner. Unless he can show that the conditions are inherant (sic) in the land I don't feel that we have the authority to grant this. Further, I agree that an error was made in issuing this permit in the first place but if a wrong was made before you cannot right the wrong by creating another.'"

■ The court's judgment in favor of the plaintiffs is in general terms. Apparently appellant Dorenkamp is of the opinion that the basis for the court's ruling was its conclusion that the evidence was insufficient to support the Board's decision,

for he argues that there was competent and substantial evidence to support the Board's finding that he would suffer a hardship unless the variance was granted, and that the court erred in substituting its judgment as to the evidence for that of the Board's. The fallacy in that argument is appellant's misconception of the reason for the court's ruling. While the scope of judicial review of a decision of a Board of Zoning Adjustment is restricted, it is not limited solely to a determination of whether the Board's decision is supported by competent and substantial evidence upon the whole record. That is *one* of the grounds of judicial review but it is not the *only* grounds, as is clear from the excerpt from Rosedale-Skinker Improvement Ass'n, Inc. v. Board of Adjustment of the City of St. Louis, Mo., En Banc, 425 S.W.2d 929, 936, quoted in appellant's brief:

"* * * The scope of judicial review of the decisions of the board of adjustment in a zoning proceedings is limited to a determination of whether the ruling [1] is authorized by law and [2] is supported by competent and substantial evidence upon the whole record. * * *"

Adopting the technique employed by the Supreme Court in that case, we have interpolated the numbers in brackets to emphasize the two distinct grounds of judicial review in a zoning proceedings, one as to the legality of the Board's decision and the other as to the competency and sufficiency of the evidence to support it. Hence if a Board of Adjustment exceeds the authority granted to it a court on review may, and should, hold the Board's decision to be illegal and void. State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030; State ex rel. Field v. Randall, Mo., 308 S.W.2d 637; State ex rel. Sheridan v. Hudson, Mo.App., 400 S.W.2d 425.

The real reason for the court's ruling in this case, we believe, is that the court concluded that the Board of Zoning Adjustment had exceeded its authority in attempting to grant appellant a variance, and that the Board's decision was therefore illegal and void. With that opinion we concur. The parties are in accord that the power and authority granted to the Board by the zoning ordinances of St. Louis County, adopted pursuant to its home rule charter (see Casper v. Hetlage, Mo., 359 S.W.2d 781) is that specified in paragraph 5 of Section 1004.070 which authorized the Board to:

"(5) Permit a variation in the yard requirements of any Zoning District or the building and set-back lines for Major Highways as provided by law where there are practical difficulties or unnecessary hardships in the carrying out of these provisions due to an irregular shape of the lot, topographical or other conditions, provided such variation will not seriously affect any adjoining property or the general welfare."

It is evident from the minutes of the meeting of May 12, 1967, that the majority of the members of the Board misconstrued the authority granted to the Board of Zoning Adjustment by that section. In the resolution adopted by a 2 to 1 vote it was stated that the Board was empowered by that section to grant variances "* * * because of practical difficulties on (sic) unnecessary hardships due to other conditions, * * *"; and it found that the building permit wrongfully issued to Dorenkamp and his reliance thereon was "* * * such a condition * * *" as should afford him relief. But Section 1004.070(5) does not give the Board an unlimited discretion to grant a variance because of *any* condition which in its opinion would constitute a practical difficulty or result in an unnecessary hardship. Indeed, an ordinance which attempted to clothe the Board with such arbitrary or unlimited discretion, without definite standards or rules for its guidance, would be subject to attack as an unconstitutional delegation of legislative authority. Lux v. Milwaukee Mechanics' Ins. Co., 322 Mo. 342, 15 S.W.2d 343; Fairmont Inv. Co. v. Woermann, 357 Mo. 625, 210 S.W.2d 26; State ex rel. Ludlow v. Guffey, Mo., En Banc, 306 S.W.2d 552.

The ordinance under consideration does not clothe the Board with such arbitrary and unlimited discretion, and by its terms definite standards are established for the Board's guidance. By those standards the Board may grant a variance only when the existing difficulty or hardship is due to: (1) an irregularity in the shape of the lot; (2) its topography; or (3) some "other condition." What other condition? It is a well-settled rule of construction of statutes and municipal ordinances that where general words follow specific words, designating specific things, the general words will be considered as limited to things of the same general character as those specified. Capra v. Phillips Investment Co., Mo., 302 S.W.2d 924; State v. Getty, Mo., 273 S.W.2d 170; Zinn v. City of Steelville, 351 Mo. 413, 173 S.W.2d 398. That rule, frequently referred to as the rule of ejusdem generis, is applicable to § 1004.070 (5), and under it the authority of the Board of Zoning Adjustment to grant variances is restricted to those instances where some physical characteristic peculiar to the lot gives rise to the difficulty or hardship. See Rosedale-Skinker Improvement Ass'n, Inc. v. Board of Adjustment of the City of St. Louis, Mo., En Banc, 425 S.W.2d 929, 932. No claim of that nature is made by Dorenkamp, nor did the Board grant the variance for any such reason. And since the Board exceeded its authority in granting Dorenkamp a variance on the ground stated, it follows that its order was illegal and that the court did not err in reversing it.

Dorenkamp also maintains that he had a vested right in the building permit issued to him, and that respondents were guilty of laches and are estopped from claiming any relief. The Missouri cases he cites, Krekeler v. St. Louis County Board of Zoning Adjustment, Mo., 422 S.W.2d 265; Fleming v. Moore Brothers Realty Co., 363 Mo. 305, 251 S.W.2d 8; and Veal v. Leimkuehler, Mo.App., 249 S.W.2d 491, do not hold that one may acquire a vested interest in an illegally issued building permit. Nor does the evidence establish that respondents were guilty of laches in seeking the enforcement of the set-back line upon learning that it was being violated. And, as respondents assert, that point was not raised in Dorenkamp's after-trial motion, so it is not preserved for review. Civil Rule 79.03, V.A.M.R.; State ex rel. State Highway Commission v. Galeener, Mo., 402 S.W.2d 336; Wintermann v. St. Louis Union Trust Co., Mo.App., 424 S.W.2d 94; Chappell v. Nash, Mo.App., 399 S.W.2d 253.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

LYON ANDERSON, Presiding Judge, concurs.

E. M. RUDDY, Judge, concurs.

ELGIN T. FULLER, Special Judge, concurs.