Mr. and Mrs. Ralph E. STOCKWELL et al., Appellants,

v.

BOARD OF ZONING ADJUSTMENT OF KANSAS CITY et al., Respondents.

No. 24990.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1968.

Rehearing Denied Dec. 2, 1968.

Walter A. Raymond, Raymond, West & Strader, Kansas City, for appellants.

Herbert C. Hoffman, City Counselor, Sherwin L. Epstein, Associate City Counselor, Kansas City, for respondent Board of Zoning Adjustment.

James P. Tierney, Kemp, Koontz, Clagett & Norquist, Kansas City, for respondents.

MORGAN, Judge.

This is an appeal in a certiorari proceeding from a judgment of the Jackson County Circuit Court which affirmed the action of the Board of Zoning Adjustment of Kansas City, Missouri, in approving a plot plan for low apartments at 47th and Jarboe submitted by respondent and opposed by appellants.

The controversy involves that area or block between 47th Street to the north and 48th Street to the south (both of which extend east and west), and Belleview on the east and Jarboe on the west. An alley extends north and south from 47th to 48th through the middle of the block. The west half of this block as shown by Exhibit H (Map 82 of the Kansas City Atlas) was originally platted or divided into fifteen lots. The twelve lots to the south, beginning at 48th and continuing north, extend from the alley to Jarboe in a uniform rectangular shape with the narrow side facing the alley and street or east and west. The three remaining lots to the north, those of primary interest here, were plotted to extend north and south with the narrow side of each on the north touching 47th. Of these three, the lot next to the alley was No. 1, that in the middle was No. 2 and No. 3 to the west was actually on the corner of 47th and Jarboe. Prior to the present controversy, there was a house facing 47th on each of these three lots. Immediately east of the alley and on 47th, there was a parking lot which was to the rear of a business building that faced east on Belleview and had its north side along 47th with practically no "set-back" from the street line. There is no dispute as to the zoning classification the city had placed on the area described. That portion east of the alley under Zoning Ordinance

65.130 had a C–1 zoning classification allowing a neighborhood retail business, while that portion west of the alley under Zoning Ordinance 65.080 was zoned as R–4 for low apartments.

Mr. Quirk, respondent here, planned an apartment complex covering most of the west half of the block. He purchased lots numbered 2 and 3 and others to the south, but appellants, herein referred to as the Stockwells, still have their residence property on Lot 1 next to the alley. It appears to be agreed that the houses that had been on Lots 2 and 3 were of similar construction to that of Stockwells and had been located the same distance back from the street line as they faced 47th.

Mr. Quirk submitted to the city his plot plans for low level apartments to extend along the east side of Jarboe north to within 20 feet of 47th. This open area of 20 feet was west of and next to Stockwells' front yard. On April 8, 1966, the city issued its building permit No. 25,727 for the proposed apartment development. Approximately ten months later on February 2, 1967, the Building Code Engineer for the city issued to Mr. Quirk an order to cease and desist all work on the development. This order, in letter form, declared that the definition of "Front Yard" in Section 65.020 of the zoning ordinance did not specifically include the corner parcel of land found at 47th and Jarboe. It further stated: "The plans which were submitted to us for a permit did not show the Ralph E. Stockwell residence located on the lot on 47th Street abutting the project on the east side. The provisions of Section 65.250(h) of the Zoning Ordinance require that the front yard of the apartment building on 47th Street shall be not less than the existing front yard of the residence. Therefore, it becomes necessary to determine what is the building line of the residence. Our interpretation is that the building line is located along the front wall of the house which contains the front door. The distance from this building line to the property line is reported to be 26 feet, which is 6 feet greater than the 20 feet pro-

vided at the apartment building." The parties agree the front upper wall of the residence that has 2 windows is within 18 feet of the property line or 1½ feet closer to the street than the apartment. At a sacrifice of space, but for accuracy and clarity, we include a picture of the north side of the block along 47th.

Mr. Quirk appealed to the Board of Zoning Adjustment and contended: "This cease and desist order has caused me serious financial harm in stopping construction of a million dollar project. Now that the project is about 80% completed, it would be financially impractical and impossible to move the location of the buildings." After giving public notice and holding a hearing on March 14, 1967, the Board approved Mr. Quirk's application based on a plot plan identified as Exhibit F. The trial court affirmed this ruling.

■■■ The scope of our review is well defined. First, we are to determine if the Board's action was legal in the sense of being authorized by law; and second, since a hearing was required, whether its decision was supported by competent and substantial evidence upon the whole record. Sec. 22, Art. 5, Constitution of Missouri, 1945, V.A. M.S.; State ex rel. St. Louis Public Service Co. v. Public Service Commission, Mo., 291 S.W.2d 95; Dunbar v. Board of Zoning Adjustment, Mo.App., 387 S.W.2d 164. Further, neither " * * * this court nor the Circuit Court may try the matter de novo or substitute our judgment for that of the administrative tribunal. If there was substantial credible evidence to support the finding and if the result reached could reasonably have been reached, we are without authority to disturb the finding unless it was clearly contrary to the overwhelming weight of the evidence." Shiverdecker v. Zoning Board of Adjustment of Fulton, Mo.App., 351 S.W.2d 43, 46.

Before considering the alleged illegality of the action taken, we must first establish the extent of the Board's authority. Section 89.090, V.A.M.S., details the powers of the Board of Zoning Adjustment. It provides in subsection 1(3): "In passing upon appeals, where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construc-

tion or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done." Section 65.300 of the Zoning Ordinances of Kansas City is consistent with this statute and contains comparable language in detailing the powers of the Board with the restrictive limitation that such power not be used to "substantially destroy" the zoning regulations or, stated otherwise, " * * * the board can in no case relieve from a substantial compliance * * *." State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030, 1032.

All parties had counsel at the hearing held before four of the five members of the Board. A staff member gave a detailed outline of the events leading to the controversy. He described the area involved, reviewed the action taken by the city in issuing the building permit and cease and desist order, and offered the following exhibits: A–Zoning Ordinance, B–Docket Map, C–Qualifications of board members, D–Staff Report, E to E–6–Pictures, F–Plot plan of apartment complex, G–Area Plan, H–Plat of block in Kansas City Atlas, I–Aerial Photograph, and J–Cease and Desist Order. All were admitted in evidence without objection. He stated the ordinance definition of a "front yard", Section 65.020, did not include a "parcel of this type." He explained that Lots 2 and 3 were plotted to face north toward 47th while the other lots to the south had been plotted to face west toward Jarboe. He had found the front door wall of the Stockwell residence to be 26 feet from the street with the porch extending out 7½ feet or to within 18½ feet of the street. He had found that the apartment complex was nearing completion.

The attorney for Mr. Quirk was sworn and testified as a witness. He, too, reviewed the events leading to the hearing, and testified that he had inspected the area. Most of his testimony pertained to his opinion concerning the proper application of the many ordinances involved. No objection was made, and he concluded that the Stock-

well residence was closer to 47th than the apartment, because Section 65.020 defined a front yard as open space, unoccupied except for a porch provided in 65.269(k). He asserted the provisions for a porch extension past the straight wall of the building did not include "the essential part of the structure, including the roof line of the second floor, to jut into the front yard." Further contention was made that the store building was in the same block, and with no "set-back" on 47th, it made the general minimum requirement of a 20 foot yard applicable at the apartment.

The Building Code Engineer for the city testified the original building permit had been issued based on the Plans Examiner's interpretation of the ordinances. He explained the confusion in applying the ordinance to the particular tract by saying, " * * * some (lots) face on either street so the ordinance doesn't clearly cover this particular type of plat." He mentioned that a prior cease and desist order had been issued in December, 1966, but had been withdrawn. He was allowed to express an opinion the store building east of the alley was in the same block and would have to be considered in determining the building line; but with a different zoning classification on the east half, he was not certain. He declared it was a "fairly normal practice" not to include adjacent property in plans submitted for a building permit. Upon inquiry as to whether the Stockwell residence did have an "open porch" that would allow the front door wall to be called the front of the residence, he indicated the doubt was created by the continuous main roof of the structure, but to a direct question said, "It is an open porch." However, to the further question " * * * where is the wall of the building closest to the street?", he answered, "That's a good question." He had signed the cease and desist order.

Mrs. Stockwell described the interior structure of the house on the upper level. She testified the floor area above the "porch" was some eighteen inches lower than that portion above the remainder of the

house, and that exposed two by fours were over the area. She offered further pictures of the area including both her house and the apartment, and confirmed that the houses removed from Lots 2 and 3 had been similar to hers and had been set back the same distance from the street.

The hearing was concluded after arguments of counsel. For Mr. Quirk the contention was made that no violation had occurred as (1) the front yard of the residence was really 18½ feet, (2) the store building was in the same block and had no set-back, and (3) if a violation did exist, an appeal was made for the Board to act under its discretion granted in Ordinance 65.250(h). For Stockwells the contentions were that the area had been rezoned and that a builder of new low apartments should be held to strict compliance, and that their view to the west was now encumbered.

The Board approved Mr. Quirk's application and in effect quashed the cease and desist order. As required by paragraph 2 of Section 89.090, V.A.M.S., four members concurred.

Appellant contends here that the Board's action was not supported by competent and substantial evidence, and was against the greater weight of all the credible evidence, and it reasonably could not have reached the result, because (1) the front yard depth was controlled by the Stockwell residence set back of 26 feet, (2) the area west of the alley was a "block" within the meaning of the zoning ordinance, thereby removing any effect of the store building, (3) the facts did not authorize the Board to allow a variance under Ordinance Sections 65.250(h) and 65.-300(c), (4) the ruling was arbitrary, unreasonable and void because it was not supported by substantial evidence, and (5) Quirk failed to show such practical difficulty or unnecessary hardship as to justify a variance. Respondent argues otherwise on each point.

■ As is obvious, we are called on to review not only the correctness of the Board's

application of the ordinances to the factual situation presented, but also to determine if the order made was a reasonable exercise of the discretion vested in the Board. We approach the latter question first as a practical necessity, because any determination we might make that the apartment plans were not in strict compliance with the ordinances would not be controlling if the discretionary powers granted allowed the Board to waive such discrepancies by granting a variance or modification.

As seen by Mr. Quirk's appeal to the Board, it is obvious it was directed to its discretion. It alleged a million dollar apartment complex was 80% completed and protested the hardship. This application or pleading initiated the hearing and invited the exercise of any discretion authorized. It, in fact, created the issue to be resolved. It is true, as Stockwells suggest, that the hearing revolved around the front yard set back requirements. However, this was not prejudicial to any of the parties, because the original apartment plan covering most of the west half of the block (Exhibit F) was in evidence. It detailed the exact measurements of not only the front but side and rear yards as well. The arguments made as to what was to be called the "front" yard, on Jarboe or 47th, were not of too great a significance other than to possibly change a side yard to a rear yard or vice versa. The apartment building was actually there and its distance from the street or from Stockwells' property was fixed. Within the realm of being reasonable, the Board could grant a variance for either a front, side or rear yard under Ordinance 65.300. Such action is conclusive upon the courts unless found to be unreasonable in that it "substantially destroyed" the regulations (Ordinance 65.300 (c)), or in that it failed to require a "substantial compliance," Nigro v. Kansas City, supra. Before considering that question, we note the suggestion that the action taken was not on discretionary grounds. Presumably, this is premised on the absence of a "finding of facts" or conclusion in the record of the hearing. However, as shown by

the record, no request was made to the Board for such findings nor was any complaint made to the trial court in the certiorari petition that none was made. It previously has been ruled that such objection is now waived. Carroll Construction Company v. Kansas City, Mo.App., 278 S.W.2d 817, 821; Colt v. Bernard, Mo.App., 279 S.W.2d 527, 531; Isgrigg v. Board of Trustees of Policemen's & Firemen's Pen. Bd., Mo.App., 401 S.W.2d 936, 939. With there being no conflict at all in the evidence insofar as the actual circumstances existing, any findings, if made, could only have repeated what was agreed to have been the facts. The only conflicting testimony was actually in the expression of different opinions as to the correct application of the ordinances. As conclusions such comments were not binding on the Board and could have been disregarded. Carroll Construction Company v. Kansas City, 820, supra. In State ex rel. Weinhardt v. Ladue Professional Building, Inc., Mo.App., 395 S.W.2d 316, the court was unable to determine the actual basis of the ruling made, and stated: "Although the order was ambiguous as to the basis for its conclusion, the basis is not of legal significance to us. At page 1129 of 101 C.J.S. Zoning § 327 it is said: ' * * * If the conclusion of the board is correct, it will not be set aside because the reason given therefor is wrong.'" It was further held, " * * * if the Board's order granting the permit can be sustained on either ground, or on any ground for that matter, it should be upheld." Mo.Dig., Zoning, ⊷605. What is a reasonable exercise of discretion necessarily depends on the particular facts of each case, but to establish some guideline for this review, we, again, quote from the oft cited Nigro case, supra. There, our Supreme Court said, " * * * if in a specific case the enforcement of a regulation according to its strict letter would cause unnecessary hardship and the board can by varying or modifying the application of the regulation obviate the hardship and at the same time fully effectuate the spirit and purpose of the ordinance, they are authorized to so vary or modify the application." We disagree

with Stockwells' assertion that there was no evidence of hardship. It was the basis of the appeal, the staff member testified a million dollar apartment complex was nearly completed, the picture exhibits in evidence confirmed this fact, and any demand it be torn down or moved, established the threatened hardship. Would the allowance of a variance "effectuate the spirit and purpose" of the ordinances? It is noteworthy that the area of the city here involved had recently been zoned for the development of low apartments. The purpose could only have been to provide not only a renewal of the area by such new construction but also to meet the demands for modern housing. The appeal to the Board did not seek a non-conforming use such as found in State ex rel. Sheridan v. Hudson, Mo.App., 400 S.W.2d 425, and there found to be beyond the discretion granted. It is also true that Stockwells had a right to continue what was now a non-conforming use and to seek the protection of the ordinance regulations. Those officials delegated to supervise such matters issued the building permit and it is not suggested that the apartments as constructed did not comply with the original plans. Under these facts, we cannot declare it to have been a self-imposed hardship. Shiverdecker case, supra. The suggested inference Mr. Quirk might have had some ulterior motive in not showing all adjacent properties on the original application is not justified by the record. Not only did the Building Code Engineer call it a normal practice, but we find no such requirement in Ordinance Section 65.410 pertaining to applications for building permits.

We look now to what were claimed to have been the applicable zoning regulations, and any others that should have guided the Board's action. Bartholomew v. Board of Zoning Adjustment, Mo.App., 307 S.W.2d 730, 732. Although, the apartments actually front on Jarboe the building permit required a set back of 20 feet from 47th. This was the standard minimum required for a front yard in this area. Ordinance Section 65.250 further required that where all of the buildings within the block on the same side of the street had a greater set back, that new construction would have to be in line with that building with the least set back. There were only two other buildings to consider, Stockwells and the store. Much of the hearing was taken in considering what was actually the set back building line of the residence. Ordinance Section 65.260 (k) allowed a 10 foot porch between building line and street. Did the "porch" or entranceway of this bungalow style residence qualify as a porch that would logically establish the front door as the building line? We fail to find a specific definition of a "porch" in the definitions established in the ordinances, and look to Webster's Dictionary, Third Edition, and there find a porch to be, " * * * a covered entrance to a building, usually with a separate roof." The uncertainty created was obvious. In addition, the store building had no yard set back on 47th and it was in the same block. Did its presence establish the building line at the standard 20 feet or was it not to be considered in view of its different classification? By argument, the question is not answered, but an attempt is made to prove it is in another block. This position is in conflict with the ordinance definition: "Block—A piece or parcel of land entirely surrounded by public * * * streets * * *" An alley is defined as a public way affording secondary access.

The problems created here are explanatory of the necessity for a discretionary power, within the limits established, in the Board of Zoning Adjustment. The continued growth and development of the city demand as much.

As shown by the facts of this case, a situation developed that called for a discretionary decision of the Board. The decision as made has not been shown to be unreasonable toward or abusive of the Stockwells' rights. The open space of a 20 foot yard to the west, the standard size, is more than that existing to the east. The legal authority of the Board to act is not

debatable, and, although we are not to substitute our judgment for that of the members, we are convinced the action taken did, in fact, effectuate the spirit and purpose of the zoning regulations and provided substantial justice to the parties.

The judgment is affirmed.

All concur.