Steven L. TAYLOR, et al., Appellants,

v.

**BOARD OF ZONING ADJUSTMENT OF the CITY OF BLUE SPRINGS, Missouri, et al., Respondents.**

**No. WD 38995.**

Missouri Court of Appeals,
Western District.

Oct. 13, 1987.

Julie L. Prewitt, Koenigsdorf, Wyrsch & Ramsey, Kansas City, for appellants.

Robert K. McDonald, Cochran, Tyree, Oswald, Barton & McDonald, P.C., Blue Springs, for respondents.

Before KENNEDY, C.J., and SHANGLER and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This case concerns municipal ordinance restrictions on signs for shopping centers. SRB Properties ("SRB") a Missouri general partnership owns a Lot which is part of a Planned Unit Development ("PUD") shopping center as approved by the City of Blue Springs, Missouri ("City"). A PUD, as discussed *infra*, is composed of individual lot owners as opposed to tenants. There are five lots in this center. The shopping center abuts Missouri Highway 7. Of the approximately 274 feet of highway frontage included in the PUD, the lot owned by SRB makes up some 124 feet, with the remaining 150 feet being included in a common area parking section still owned by the developer. According to the Declaration of Covenants, Conditions and Restriction applicable to the PUD property, the parking area is a common area to which every owner has a right and easement of use and enjoyment. Maintenance of the parking area is accomplished under the covenants through assessments by the shopping center's improvement association. The other three lots in the PUD, to be occupied by other businesses, do not abut the highway.

SRB, which operates a Goodyear Tire franchise business on its lot, applied in December, 1985, to put up a free standing sign. The next day a permit for construction of the sign was issued by the attorney, and the sign was then erected at some expense.

Under City ordinance number 1602.1, a shopping center is defined as "any area containing four (4) or more shops, stores and other places of business permitted" under the zoning regulations and "providing off-street parking facilities in common for all the businesses and their customers." Under ordinance number 1617.1, multi-tenant buildings and shopping centers are permitted a free-standing sign for every three hundred (300) feet of frontage or fraction thereof. The area or size of a free standing sign is determined as three-fourths (¾) square feet of sign face for every foot of frontage of the business advertised, up to 700 square feet.

In March, 1986, the City revoked the sign permit issued to SRB, apparently at the instigation of the other lot owners in the shopping center/PUD. These owners conveyed to the City their opposition to SRB utilizing the shopping center's entire front footage to satisfy the sign ordinance. Under the ordinance, SRB's 123.64 foot frontage would entitle it a 92.93 square foot sign. As erected, the SRB sign measures 99 square feet. SRB appealed the permit revocation to the City's Board of Zoning Adjustment ("Board"). The Board upheld the revocation and denied SRB's request for a variance.

In its conclusions of law, the Board found that SRB's property is located within a shopping center entitled to only one sign based on the sign ordinance, and that SRB's sign did not represent the other property owners within the center. The Board found that the City and the Board are not estopped from invalidating a permit erroneously issued even if it was honestly obtained. The Board found that the granting of the desired variances (for the larger sign and for two signs) would be in opposition to the general spirit and intent of the zoning regulations, would affect the general welfare in that safety and aesthetic reasons exist to justify the limits on signs, and would adversely affect adjacent property owners by limiting their ability to advertise their places of business. The Board found that strict application of the provisions of the sign ordinance would not constitute an

unnecessary hardship on SRB in that SRB had provided information which caused the permit to be issued in the first place and that a review of the ordinance would have revealed to SRB that it was taking the available sign space for the shopping center. This decision was affirmed by the circuit court pursuant to Section 89.110, RSMo.1986.

Important to the decision and not discussed by the Board is the distinction between a shopping center and a planned unit development. SRB's lot is within a PUD. This means an area of land to be developed as a single entity for a number of dwelling units and/or commercial uses, the plan for which is somewhat at variance with existing zoning in terms of lot size, bulk use, density, lot coverage or existing open space. D. Hagman, *Urban Development and Land Development Control Law*, p. 431 (1971). A PUD is primarily an alternate way of zoning. *Id.* A PUD contemplates the conveyance of property to individual owners, with these owners holding certain areas in common or having common access to areas held by the developer. Because of these rights held in common, complicated restrictions and covenants are necessary. *Id.* at 462. An association may be established as the organization to administer the provisions. *Id.* In the traditional shopping center the developer retains title to the property while leasing the premises to various entrepreneurs and enterprises. Under the terms of the lease a business is given access to common areas such as parking lots which are held by the developer. The sign ordinance in question does not account for this distinction and the difference between PUD shopping centers and those traditional centers where the spaces are leased to business proprietors. *Id.* at 455.

As noted, SRB applied for the sign permit pursuant to the ordinance provisions for shopping centers under which its business fell. SRB provided a plat which clearly identified its lot and the measurements necessary for arriving at a decision on the application. The City issued and was fully justified in issuing a sign permit to SRB. The covenants and restrictions of this PUD do not provide a mechanism for allocating or any mention at all concerning a sign which would serve to limit SRB's actions. Both parties followed proper procedure. The sign was erected and determined to be too large by slightly more than six square feet. It was for this stated reason SRB was told to remove the sign.

Section 89.090, RSMo. describes the powers of the boards of adjustment. Subdivision 1(3) provides for a variance:

Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.

"A variance allows boards of adjustment to grant exemptions from ordinance requirements if certain special circumstances warrant the alleviation of a hardship." *Doorack v. Board of Adjustment of City of Town and Country*, 709 S.W.2d 140, 143 (Mo.App.1986). The burden of proving that plaintiffs would suffer practical difficulty or unnecessary (or undue) hardship if a zoning variance is not granted is upon plaintiffs. *Volkman v. City of Kirkwood*, 624 S.W.2d 58, 61 (Mo.App.1981); *Doorack, supra*, at 143. The general rule is that the authority to grant a variance should be exercised sparingly, *Doorack, supra*, at 143, and in keeping with the spirit of the zoning plan and the public welfare, *Volkman, supra*, at 61.

SRB's attempt to obtain a variance for its nonconforming sign was rejected. Judicial review is limited to a determination of whether the decision of the Board was authorized by law and supported by substantial evidence upon the whole record, done without substituting the court's judgment for the Boards and by viewing the evidence and reasonable inferences in the light most favorable to the Board. *Volkman, supra*, at 59–60. It has also been stated that the arbitrary and unreasonable application of

zoning ordinances is a subject for judicial inquiry, with the court not bound by an arbitrary or capricious action of the board, or where there has been a manifest abuse of discretion. *State ex rel. Rhodes v. City of Springfield*, 672 S.W.2d 349, 356 (Mo. App.1984). This court is persuaded that this is one of those rare cases in which there has been a manifest abuse of discretion.

■ The Board's conclusions of law follow the format set out by the Missouri Supreme Court for establishing a variance. For a variance an applicant must prove:

(1) relief is necessary because of the unique character of the property rather than for personal considerations; and

(2) applying the strict letter of the ordinance would result in unnecessary hardship; and the

(3) imposition of such a hardship is not necessary for the preservation of the plan; and

(4) granting the variance will result in substantial justice to all.

*Matthew v. Smith*, 707 S.W.2d 411, 415–16 (Mo. banc 1986).

■ Here, the unique character of SRB's property necessitates relief. The property is part of a city approved planned unit development for which the PUD covenants and restrictions provide no guidelines for a sign. The property is classified as part of a shopping center for sign purposes. Because of the vagueness of the ordinance, owner SRB legitimately applied for and was granted a sign based on the frontage requirements of the ordinance. The property is unique in that neither set of potential controls serves to limit the granting of a sign under the circumstances.

■ Applying the strict letter of the ordinance would result in unnecessary hardship. *See e.g., One Hundred Two Glenstone v. Board of Adjustment of the City of Springfield*, 572 S.W.2d 891, 893 (Mo.App.1978). In revoking SRB's sign permit and refusing to grant a variance, the Board is essentially requiring SRB to forfeit $7,000 it has invested in the sign. A variance contemplates a departure to pre-

clude confiscation of property. 82 Am. Jur.2d Zoning and Planning, § 255 (1971). In addition, imposition of such a hardship is not necessary for the preservation of the plan. The one sign as it stands does not exceed the number contemplated by the ordinance and exceeds the dimension requirements in an amount that could only be considered *de minimis*. A variance here will be consistent with the general spirit and intent of the zoning regulations. It is the Boards view that strict application will not constitute an unnecessary hardship since SRB provided information which caused the permit to be issued and that SRB should have known it was taking all the sign space available for the shopping center. This rationale is unpersuasive since SRB provided the city a plot plan showing all the owners in the center and correct dimensions of the lots. On the basis of this information a permit was *properly* issued. There was no error in granting a sign permit to SRB, the only error was in approving a sign that exceeded the allowable size. It is not clear from the present ordinance why SRB's knowledge of the taking of all the sign space would have any impact on their application.

■ Finally, granting the variance would result in substantial justice to all. The City approved the PUD and enacted the sign ordinance that has allowed the present situation to develop. The fact that SRB is only one merchant-owner in a shopping center is not expressly addressed by the City's sign ordinance. A representative of the city candidly admitted it was the City's error in approving a 99 square foot sign when only 92.73 square foot sign was proper. The fact that the shopping center's other property owners may be affected by granting SRB a variance should not preclude a just result in SRB's favor. SRB has proceeded under the ordinance, and it is the City's ordinance that has caused the problem. Under the facts and circumstances of this case, the variance of SRB should have been granted. *Rosedale-Skinker Improvement Assn. v. Board of Adjustment of the City of St. Louis*, 425 S.W.2d 929, 936 (Mo. banc 1968).

This court is not unmindful of the importance of a city exercising its control over land development. This case demonstrates the need for a comprehensive approach.

The city's zoning and sign ordinance here did not adequately address the factual setting that developed. The PUD as approved provided no control over the sign. The sign ordinance did not provide guidelines for a shopping center lot owned by an individual merchant. The necessary refinements can only be made by the city. Until such time as these modifications are made, it seems unjust for the City to burden a property owner who has proceeded in accord with the City's scheme. *See State ex rel. Casey's General Stores, Inc. v. City of Louisiana,* 734 S.W.2d 890 (Mo.App.1987), where the court found error in failing to find the city equitably estopped when they had been consulted and gave assurances as to a building permit. The city should seriously consider drafting a scheme of ordinances which contemplate fair sign control for PUD shopping centers allowing all owners in the center to a sign. It is hoped the city will make provision by variance or otherwise for the other owners in this center to be permitted to have a business sign. No quarrel is made as to the city's limitation of size of a sign based on the front footage of the entire center, the only problem is that under a PUD scheme in Blue Springs one front lot owner can make application for and receive the only sign allowed to the center. This arrangement would nullify other abutting owners, and certainly those on interior lots any chance to put up a sign. In this case SRB as appellant in this court does not ask for the exclusive right to the center's one sign. To that end the city is encouraged, by variance or other means to allow all the businesses here to have a share of the existing pole and sign as erected by SRB, or to grant an additional sign.

The judgment of the circuit court is reversed. The cause is remanded to the circuit court with directions that the cause be remanded back to the Board of Adjustment with directions that the Board reinstate or direct the city to reinstate the permit and grant the variance requested by SRB.