Carolyn **KARELITZ**, et al.,
**Petitioners–Appellants,**

v.

Joseph **SORAGHAN**, et al., Members of
**the Board of Adjustment of the City of
Kirkwood, Respondents–Respondents,**

**and**

**St. Joseph's Hospital of Kirkwood,
Intervenor.**

No. 62447.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 13, 1993.

Robert Herman, Schwartz, Herman & Davidson, St. Louis, for appellant.

John Michael Hessel and John D. Husmann, St. Louis, for respondent.

Kenneth C. Jones, James F. Gunn, St. Louis, for intervenor St. Joseph's Hospital of Kirkwood.

CRANDALL, Presiding Judge.

Petitioners, Carolyn Karelitz, et al., appeal from the judgment of the circuit court which affirmed the decision of defendants, Joseph Soraghan, et al., as members of the Board of Adjustment of the City of Kirkwood, to grant a front yard setback variance to intervenor, St. Joseph Hospital of Kirkwood. We affirm.

Petitioners are the owners of residential property which is adjacent to and contigu-

ous with St. Joseph Hospital of Kirkwood (Hospital). Hospital operates its business in a residential area of the City of Kirkwood (Kirkwood), pursuant to a special use permit. The zoning district in which Hospital is located requires a front yard setback of 40 feet and requires that off-street parking lots adhere to these setback requirements.

Hospital presented its plan for the construction of a medical building to Kirkwood's Planning and Zoning Commission (Commission) and City Council. Eventually, an amended plan was approved by· the Commission and the Kirkwood City Council. The plan provided for the construction of a parking lot. The proposed parking area would be an extension of an existing parking lot, which was set back only 20 feet from the street and which ran along Couch Avenue in front of Hospital. Because the proposed parking lot violated the 40 foot front yard setback requirement, Kirkwood Building Commissioner denied Hospital's application for a building permit.

Hospital then appealed to Kirkwood's Board of Adjustment (Board), seeking a variance. Following a public hearing, Board granted the variance and issued a written decision which provided in pertinent part:

### RESOLUTION

WHEREAS, the Board does find and determine that the property in question is in Zoning District R–3, and pursuant to the provisions of Ordinance No. 5085, "The Zoning Ordinance of the City of Kirkwood," requires a forty (40) foot front yard setback line, and

WHEREAS, the applicant desires to construct parking spaces which would encroach on said front yard setback requirement, and

WHEREAS, the Board does further find and determine that to grant a variance of twenty (20) feet on said front yard setback requirement would not constitute a change in the district map, would not impair an adequate supply of light and air to the adjacent property, would not increase the danger of fire,

would not diminish nor impair the established property values within the surrounding area, and would not in any way impair the public health, safety, comfort, and morals of the City of Kirkwood.

NOW, THEREFORE BE IT RESOLVED, that the appeal of St. Joseph Hospital is hereby granted for the construction of parking spaces to be within twenty (20) feet of the property line along Couch Avenue northward from the south curb line of the existing entrance at Woodbine to one hundred (100) feet south of Ann Avenue, and the Building Commissioner is hereby directed to issue a permit for such construction, all in accordance with the decision of this Board, and provided that all other Ordinances and regulations of the City of Kirkwood are met....

Petitioners then filed a writ of certiorari in circuit court, seeking review of Board's decision. The trial court upheld Board's decision, granting the variance to Hospital.

■ Petitioners' first point involves the threshold issue of whether Board's action is null and void because Board failed to make a written finding of fact specifying its reason for granting the variance, as required by Kirkwood's zoning ordinance. When Board exercises its power to grant or to deny a variance, Article XVI, § 3(e) of Kirkwood's Zoning Ordinance provides in relevant part:

In considering all appeals as to this ordinance and before making any finding in a specific case, the board shall determine first that the proposed change will not constitute a change in the district map, impair an adequate supply of light and air to adjacent property, increase congestion in public streets, increase the danger of fire, materially diminish or impair established property values within the surrounding area, and will not in any other respect impair the public health, safety, comfort, morals and welfare of the City of Kirkwood. *Every change granted or denied by the board shall be accompanied by a written finding of fact based on sworn testimony and evidence, spec-*

*ifying the reason for granting or denying the variation....*

(Emphasis added).

■ The powers of municipal bodies to regulate land use are derived from the state police power, as that power is delegated through enactment of statutes. *McCarty v. City of Kansas City*, 671 S.W.2d 790, 793 (Mo.App.1984). A municipality must conform to the terms of the grant when using the powers delegated to it by the legislature. *Id.* If there is a conflict between the state statutes and the municipal ordinances, the former must prevail. *Id.*

Chapter 89, RSMo (Cum.Supp.1992) authorizes municipalities to pass ordinances which designate the boundaries for districts and which define the allowable land uses in such districts. *See Matthew v. Smith*, 707 S.W.2d 411, 412–413 (Mo. banc 1986). The board of adjustment reviews specific applications of the zoning ordinances. Section 89.090, RSMo (Cum.Supp. 1992). The board has the authority to grant variances from the strict letter of the zoning ordinance. *Matthew*, 707 S.W.2d at 413. Section 89.080, RSMo (Cum.Supp. 1992) provides, *inter alia:*

> The board shall keep minutes of its proceedings, showing the vote of each member upon question, or, if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the board and shall be a public record. All testimony, objections thereto and rulings thereon, shall be taken down by a reporter employed by the board for that purpose.

Chapter 89 does not require, however, that the board make written findings of fact. *Mullen v. City of Kansas City*, 557 S.W.2d 652, 654 (Mo.App.1977).

In the present action, Kirkwood's zoning ordinance specifically states that the board must accompany its grant or denial of a variance with "a written finding of fact ... specifying the reason" for its action. Because Chapter 89 is silent as to whether the board must render findings of fact, Kirk-

wood's ordinance is not in conflict with Chapter 89 and it is within Kirkwood's authority to add that requirement to its zoning ordinance. The plain language of Kirkwood's ordinance dictates that Board should issue an opinion setting forth the essential findings of fact as well as the reasons for its action. The purpose of such findings is not only to inform the parties of the basis of Board's decision but also to assist the courts in reviewing Board's action.

Board argues that not only does Chapter 89 not require written findings of fact, *Mullen*, 557 S.W.2d at 654, but also that the record is sufficient in that it contains the transcript of the proceedings before Board. *See Ogawa v. City of Des Peres*, 745 S.W.2d 238, 242 (Mo.App.1987). Board contends that its deliberations and oral expressions are included in the transcript so that there is no confusion or speculation as to its findings. In *Mullen* and *Ogawa*, however, the local zoning ordinance did not require written findings of fact. In the absence of a specific requirement in the local ordinance that the board issue written findings of fact, it is clear that a reviewing court may find that a transcript of the proceedings is sufficient. *See Ogawa*, 745 S.W.2d at 242.

Given that Kirkwood's ordinance requires a written finding of fact specifying the reason for granting a variance, the pivotal issue is whether Board's failure to comply with the directive of the ordinance automatically renders Board's decision null and void; or whether the record, including the transcript of the hearing before Board, is sufficient to assure meaningful review of Board's decision. We find that, under the facts of this case, Board's failure to comply with the precise requirement of Kirkwood's ordinance does not render its decision null and void. A review of the record before us indicates that although different conclusions could be drawn from the evidence, the facts are not in dispute and the reasons for Board's grant of a variance are clearly articulated in the transcript of the proceedings. The transcript adequately apprises the parties of the basis of Board's decision

and affords sufficient information for our review. We therefore hold that appellate review of the Board's decision is proper. Petitioners' first point is denied.

 Petitioners' second point is that Board's decision was not supported by competent and substantial evidence because Board ignored the factors for granting a variance, as set out in Kirkwood's ordinance. On appeal, we review the findings and conclusions of the Board, rather than that of the circuit court. *Village of Westwood v. Board of Adjustment of the Municipality of Creve Coeur,* 811 S.W.2d 437, 440 (Mo.App.1991). We limit our review "to a determination of whether the board's decision is authorized by law and is supported by competent and substantive evidence upon the whole record." *Behrens v. Ebenrech,* 784 S.W.2d 827, 828 (Mo.App. 1990).

Article XVI, § 3(b) of Kirkwood's zoning ordinance sets forth the factors which must exist to justify Board's grant of a variance:

*Powers relative to variations.* When, by reason of exceptional narrowness, shallowness, or shope [sic, probably should be "slope" [explanation furnished in original]] of a specific piece of property at the time of the adoption of this Ordinance, or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, which condition is not generally prevalent in the neighborhood, the strict application of the area regulations of the Ordinance would result in peculiar and exceptional practical difficulties or exceptional and undue hardship upon the owner of such property, the Board is hereby empowered to authorize upon an appeal relating to such property, a variation from such strict application so as to relieve such difficulty or hardship.

Petitioners first invoke the doctrine of *ejusdem generis* to defeat Board's grant of the variance to Hospital. The rule of *ejusdem generis* is a tool to be used in construing a writing where the legislative intent or the language expressing that intent is unclear. *State ex rel. C.C.G. Management*

*Corp. v. City of Overland,* 624 S.W.2d 50, 53 (Mo.App.1981). Where the intent of the writing is not ambiguous, however, we simply give the words their plain and ordinary meaning. *City of Richmond Heights v. Richmond Heights Presbyterian Church,* 764 S.W.2d 647, 648 (Mo. banc 1989).

Petitioners focus on the phrase in the ordinance "other extraordinary or exceptional situation or condition of a specific piece of property" and argue that this language is general in nature and follows phrases which contain specific language, thus limiting the factors Board may consider in granting a variance. They contend that the application of *ejusdem generis* to the ordinance means that Board may grant a variance only where some physical characteristic of Hospital's lot gives rise to a hardship, and not where just any form of hardship would accrue to Hospital. *See State ex rel. Rabenau v. Beckemeier,* 436 S.W.2d 52, 57 (Mo.App.1968).

Petitioners reliance on *Rabenau,* 436 S.W.2d at 57 is misplaced. In *Rabenau,* the ordinance permitted the Board to grant a variance when the hardship was due to (1) an irregularity in the shape of the lot, (2) its topography, and (3) some "other condition." *Id.* In interpreting the phrase "other condition," the court found that, under *ejusdem generis,* the board's authority to grant a variance was limited to those instances in which some physical characteristic peculiar to the lot created the hardship or difficulty. *Id.* The language "other condition," however, is more limiting than the language in Kirkwood's ordinance.

The phrase in Kirkwood's ordinance "other extraordinary or exceptional situation or condition of a specific piece of property" evinces an intent to cover other situations of practical difficulties or of undue hardship to the landowner. Although the phrase follows language which relates to the physical characteristics of the property, the phrase indicates that Board may look at criteria other than the physical characteristics of the property. The language therefore broadens, rather than restricts, the factors Board may consider in granting a variance. The rule of *ejusdem generis,*

therefore, does not apply to defeat the intent of the ordinance provision under consideration here.

■ Petitioners next contend that the evidence does not support a finding that the strict application of the setback requirement to the parking lot gives rise to the resultant "practical difficulties or exceptional and undue hardship" necessary to support the grant of a variance to Hospital.

■ A variance provides relief for landowners who would suffer a special hardship from the literal application of a zoning ordinance. *Slate v. Boone County Bd. of Adjustment*, 810 S.W.2d 361, 363 (Mo.App. 1991). The authority to grant a variance should be exercised sparingly and only under exceptional circumstances. *Matthew*, 707 S.W.2d at 413.

■ Here, the variance sought by Hospital was a "non-use" or "area" variance, which "authorizes deviations from restrictions which relate to a permitted use, rather than limitations on the use itself...." *Slate*, 810 S.W.2d at 361 (quoting *Matthew*, 707 S.W.2d at 413). Hospital must establish, *inter alia*, practical difficulties while complying with the ordinance, which is a slightly less rigorous standard than "unnecessary hardship." *Matthew*, 707 S.W.2d at 416. The rationale for this lessened standard is that an area variance is a relaxation of one or more incidental limitations to a permitted use and does not alter the character of the zoning district. *Id.*

■ Practical difficulties refer to conditions affecting the land in question. *Behrens*, 784 S.W.2d at 827. Although there is no precise definition of practical difficulties, at the very least, a person seeking a non-use variance must demonstrate that, as a practical matter, the property cannot be used for a permitted use without coming into conflict with the restrictions contained in the ordinances. *Slate*, 810 S.W.2d at 364. Relevant criteria to consider include: '(1) how substantial the variation is in relation to the requirement, (2) the effect, if the variance is allowed, of the increased population density thus produced on available governmental facili-

ties (fire, water, garbage and the like), (3) whether a substantial change will be produced in the character of the neighborhood or a substantial detriment to adjoining properties created, (4) whether the difficulty can be obviated by some method, feasible for the applicant to pursue, other than a variance, and (5) whether in view of the manner in which the difficulty arose and considering all of the above factors the interests of justice will be served by allowing the variance.'

*Id.* (*quoting Wachsberger v. Michalis*, 19 Misc.2d 909, 191 N.Y.S.2d 621, 624 (N.Y.Sup.Ct.1959), *aff'd*, 18 A.D.2d 921, 238 N.Y.S.2d 309 (N.Y.App.Div.1963)). Generally, the determination of whether practical difficulties exist is a factual matter for the board's resolution and is reversible only for an abuse of discretion. *Rosedale–Skinker Improvement Ass'n v. Bd. of Adjustment of City of St. Louis*, 425 S.W.2d 929, 933 (Mo. banc 1968).

In the case before us, Hospital was lawfully granted the right to construct a medical office building on its premises. In order to acquire sufficient off-street parking to service the new facility, it was necessary that Hospital obtain a variance from the applicable 40 foot front yard setback requirement. The proposed parking area would encroach 20 feet on the established setback requirement and would extend about 250 feet along Couch Avenue. At the time it sought the variance, Hospital already had a 20 foot variance for an off-street parking area which stretched approximately 1200 feet along that same street. Thus, Hospital was merely seeking to enlarge an existing parking lot. The alternative to securing a variance was for Hospital to tear down either some homes it owned in the neighborhood or a maintenance shed which was of value and of use to Hospital. Hospital adequately established that it would encounter practical difficulties if it complied with the requisite setback for an off-street parking lot. As a practical matter, Board did not abuse its discretion in granting Hospital a variance for the additional parking area which it needed as a result of the construction of

the medical office building. Petitioner's second point is denied.

The judgment of the trial court is affirmed.

PUDLOWSKI and GRIMM, JJ., concur.