Joseph T. ARENS, et al., Respondents,

v.

CITY OF ST. LOUIS, et al., Appellants.

Nos. 62719, 62720.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 22, 1994.

Uthoff, Graeber, Bobinette & O'Keefe, Kevin M. O'Keefe, St. Louis, for respondents.

Deeba, Sauter & Herd, Charles M. Deeba, Susan T. Ryan Haupt, St. Louis, for appellants.

SIMON, Presiding Judge.

Appellants, City of St. Louis, the Board of Adjustment of the City of St. Louis (Board), Rick Friedewald, et al., members of the Board of Adjustment, and Herman E. Smith, Jr. (Smith), appeal from the judgment of the circuit court reversing the decision of the Board granting a side yard set back variance to Smith.

On appeal, appellants essentially claim the trial court erred in reversing the Board's decision because the Board's decision was based on competent and substantial evidence establishing a practical difficulty as a basis for granting the variance. We affirm.

Smith is the owner of a parcel of land (the lot) located at the corner of Sulphur and Columbia Avenues in the City of St. Louis, in an area zoned for single family dwelling. The lot is adjacent to the parcel of land owned by respondents, Joseph T. and Graceann Arens. Respondents' house is on this parcel. At the time Smith bought the lot, it was unimproved. The lot was apparently subdivided away from respondents' parcel, the line being drawn approximately eleven inches from respondents' bay window. Smith sought and received a permit, issued on May 12, 1989, to construct a single family dwelling according to approved plans, on condition that said construction comply with the provisions of the zoning ordinance of the City of St. Louis. Construction commenced and Mr. Arens became concerned when he saw how close Smith's house was being built to his property. It is conceded that Smith's house was built in violation of § 26.20.070 of the Revised Code of the City of St. Louis (1980) (all references to ordinance provisions shall be to Revised Code of the City of St. Louis (1980) unless otherwise noted), which requires a side yard setback of at least four feet. The east wall of the Smith residence encroaches on the required side yard by about one foot. Smith sought a variance from the Building Commissioner which was denied. Smith appealed to the Board which, after a public hearing, granted the variance. Respondents then filed a writ of certiorari in the circuit court, seeking review of the Board's decision. The trial court, finding that the Board's decision was not based on competent and substantial evidence and that the Board acted arbitrarily and capriciously, reversed the Board's decision, reinstated the Building Commissioner's denial of Smith's request for a variance, and remanded the matter to the Board for further proceedings. Appellants now appeal the trial court's judgment.

At the outset, we note that appellants' brief in this court is markedly deficient in that it fails to comply with Rule 84.04(d) which requires the points relied on to state briefly and concisely what actions or rulings of the trial court are sought to be reviewed and wherein and why they are claimed to be erroneous. A point relied on that fails to follow these rules preserves nothing for review. *Brown v. St. Louis County*, 792 S.W.2d 398, 400[1] (Mo.App.1990). Appellants' points are as follows:

I.  THE TRIAL COURT ERRED IN REVERSING THE [BOARD'S] DECISION BASED ON A LACK OF COMPETENT AND SUBSTANTIAL EVIDENCE.

II.  THE TRIAL COURT ERRED IN FINDING THAT THE BOARD'S DECISION WAS NOT SUPPORTED BY COMPETENT AND SUBSTANTIAL EVIDENCE.

III.  THE TRIAL COURT ERRED IN FINDING THAT NO PRACTICAL HARDSHIP EXISTED AS A BASIS FOR GRANTING THE VARIANCE.

These points do not state why the trial court erred, and therefore do not comply with Rule 84.04(d). *Id.*, at [2]. Moreover, they are redundant. Points I and II contain the same allegation of error, with slightly different words. However, because appellants' essential contentions can be gleaned from the argument section of the brief, we exercise our discretion to review. *Id.*

Appellants essentially contend that there was competent and substantial evidence before the Board on which it could find that a practical difficulty exists, making it difficult to comply with the strict letter of the zoning code, which serves as the basis for the Board's decision to grant the variance.

The applicable ordinance is § 26.32.080 which provides:

26.32.080  **Variances.**

The board shall, upon appeal in specific cases, and after a public hearing, authorize such variances from the terms of this title, subject to terms and conditions fixed by the board, as will not be contrary to the public interest where by reason of exceptional narrowness, shallowness, shape of topography, or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation of this title would result in peculiar and exceptional difficulties to or exceptional and demonstrable undue hardship upon the owner of the property as an unreasonable grant of a privilege.  The board is authorized upon an appeal relating to the property, to grant a variance from strict application so as to relieve the demonstrable difficulties or hardships, provided the relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zoning plan of the city, as embodied in this title and map.  In granting such variances, the board shall find that all of the following conditions exist:

A.  That the variance will not authorize the operation of a use other than those uses specifically enumerated for the district in which the property for which the variance is being sought is located.

B.  That, owing to exceptional and extraordinary circumstances, literal enforcement of the provisions of this title will result in unnecessary hardship.

C.  That the circumstances aforesaid were not created by the owner of the property and are not due to or the result of general conditions in the district in which the property is located.

D.  That the conditions upon which the request for a variance is based would not be applicable, generally, to other property within the same zoning district.

E.  That the development or use of the property for which the variance is sought, if limited by a literal enforcement of the provisions of this title, cannot yield a reasonable return in service, use or income as compared to adjacent conforming property in the same district.

F.  That the variance will not substantially or permanently injure the appropriate use of adjacent conforming property in the same district.

G.  That the variance will not alter the essential character of the district in which the property for which the variance is being sought is located.

H.  That the proposed variance will not impair an adequate supply of light and air to adjacent property, or substantially increase the congestion in the public streets, or increase the danger of fire, or impair property values within the neighborhood.

I.  That the variance will not weaken the general purposes of this title or the regulations herein established for the specific district.

J.  That the variance will be in harmony with the spirit and purposes of this title.

K.  That the variance will not adversely affect the public health, safety, morals, comfort and general welfare.

At the hearing before the Board, the Board had before it "the appeal to the Board, the denial of the applicant, the publication notice and the Neighborhood Assistance report."  Lisa DeLorenzo, a representative of the City of St. Louis, presented to the Board photographs of the property, a Sanborn map and various site plans.  She also asked the Board to take note of several ordinance provisions including § 26.26.020 prohibiting structures unless the placement of the structure makes the premises conform to the regulations for the district in which the premises

are located; § 26.20.070 requiring a side yard of not less than four feet in width on each side of a building; and § 26.08.440 defining "yard" as open space between buildings and the adjoining lot line which is open to the sky unobstructed by a structure other than specific listed exceptions. Ms. DeLorenzo stated that "Permit No. 14847 was issued on May 12, 1989, to construct a single family dwelling according to approved plans on condition that said construction comply with provisions of the zoning ordinance of the City of St. Louis." She stated also that the applicant (Smith) had "proposed minor changes that would expand the fireplace [from] 24 inches to 27 and-a-half inches and the roof overhang from 24 inches to 26 and-a-quarter inches."

Smith's attorney stated to the Board that he was at the hearing to represent Mr. and Mrs. Smith. He stated that the owners and the contractor submitted architectural drawings and blueprints to the Building Division for a permit to erect a house on the lot, that the plans and drawings were examined, and the permit was issued in compliance therewith. He stated that the contractor commenced construction of the home and the home was erected in compliance with the permit; that upon spot survey of the structure after completion it was discovered that the house, in fact, had encroached upon the east side setback line ranging from 1 plus feet at the north end to approximately 1 foot at the south end of the house; that the east wall of the Smith residence rests on a steel-reinforced poured concrete foundation and that wall contains the quarters for the mechanical, electrical, and plumbing installations in the residence; that this construction error in placement of the building at that location was discovered after the fact and that the only remedy, taking in the enforcement of the strict language of the ordinance, would be to remove the residence; that to remove the east wall and relocate it is a physical and financial impossibility; that it would probably be as costly to remove the wall and move it to the west as it would be to rebuild the residence; that the Smiths have approximately $114,000.00 invested in the residence and to compel them to remedy the problem would necessarily force upon them

financial disaster, foreclosure and ultimate bankruptcy. Smith's attorney also stated that the overhang of the bay window and the basement window well of the Arens house encroach on the property line of the Smith lot.

Mr. Arens stated that he had no objection to a house being built on the lot, but his objection began to arise when he saw how close the home was being built to his property; that he investigated the situation, contacted the City and the Building Inspectors, and everybody told him everything was fine and in order; that he eventually discovered the City had allowed the original owner of his property to subdivide the lot away from his lot, and the City "allowed him to subdivide and cut the line within approximately 11 inches of [his] bay window;" that he had removed two awnings that were on the first floor, but because now, the closeness of the roofs, he has no way of getting the ladder to the second floor to remove the awning; that he had talked to everybody he could possibly get in touch with from the City, the Building Commission, the Zoning Commission, Engineer's Office; that water drained into his window well and Mr. Smith told him that he planned to put in a sidewalk which would be beveled toward the foundation of the Smith house; that he eventually spoke to Ed Dobbs, the Zoning Administrator, who told him he had a legitimate complaint and that the drawings submitted must have been wrong; that while the sidewalk behind the Smith house was being poured he told the contractor that it was coming over on his property, and the contractor promised that it would be graded away from his home but now that it is finished it still slopes right into his basement window; that the gutter on the Smith house is eight inches away from the roof of his bay window; and that his greatest concern has to be with the safety hazards involved in the homes being so close, including fire, and if they had to get out of their second story window there is no way they could do it.

The record on appeal does not contain Smith's application for a variance. Nor is there any indication that the spot survey, identifying the encroachment, was before the

Board even though Smith's appeal to the Board states that the spot survey is attached. The record does not reflect that any witnesses were sworn before testifying, although Smith's attorney filed an affidavit in the trial court stating that he was sworn in at the Board hearing and all testimony before the Board was under oath, and that to his best knowledge and belief all other witnesses testifying before the Board were also sworn in and testified under oath.

The Board's findings of fact state the location of the lot, and that Smith has made the minor changes to the fireplace and the roof overhang as stated by Ms. DeLorenzo. The findings also include a summary of some of the statements made by Smith's attorney and Mr. Arens. The conclusion of law and order of the Board states that "there exists a practical difficulty with respect to the subject application making it difficult to comply with the strict letter of the Zoning Code. The Board, therefore, grants a variance to permit the Applicant to maintain the side yard changes to single family dwelling construction at 2604 Sulphur." The Board's decision does not refer to the east wall of the Smith house encroaching on the setback requirement.

■ On appeal, we review the findings and conclusions of the Board, rather than that of the trial court. *Karelitz v. Soraghan,* 851 S.W.2d 85, 89[3, 4] (Mo.App.1993). Our review is limited to a determination of whether the Board's decision is authorized by law and is supported by competent and substantial evidence upon the whole record. *Id.* The determination of whether there exists practical difficulties warranting a variance in any particular case is a factual matter for the Board's resolution, reversible only for abuse of discretion. *Hutchens v. St. Louis County,* 848 S.W.2d 616, 619[5, 6] (Mo.App.1993). The authority to grant a variance should be exercised sparingly and in keeping with the spirit of the zoning plan and the public welfare. *Taylor v. Board of Zoning Adjustment of Blue Springs,* 738 S.W.2d 141, 143 (Mo. App.1987). Arbitrary and unreasonable application of zoning ordinances is a subject for judicial inquiry, with the court not bound by

an arbitrary or capricious action of the Board. *Id.,* at 143–44.

Section 89.090. R.S.Mo.(1986) grants the Board the power to grant a variance. That section provides, in pertinent part:

1. The board of adjustment shall have the following powers:

\*　\*　\*　\*　\*　\*

(3) In passing upon appeals, where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the construction or alteration of buildings or structures so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.

An applicant for a variance must prove:

(1) relief is necessary because of the unique character of the property rather than for personal considerations; and

(2) applying the strict letter of the ordinance would result in unnecessary hardship; and the

(3) imposition of such a hardship is not necessary for the preservation of the plan; and

(4) granting the variance will result in substantial justice to all.

*Matthew v. Smith,* 707 S.W.2d 411, 415–16 (Mo. banc 1986).

■ Appellants argue that the evidence supports the Board's finding of a practical difficulty. Appellants' main authorities for their contention that a practical difficulty exists with respect to the lot in question are *Stockwell v. Board of Zoning Adjustment of Kansas City,* 434 S.W.2d 785 (Mo.App.1968), and *Taylor,* supra, 738 S.W.2d at 141.

In *Stockwell,* a developer submitted to the city his plot plans for a proposed development of low level apartments, for which the city issued a permit. Ten months later, when the project was about 80 percent completed in compliance with the permit and the original approved plans, the Building Code Engineer for the city concluded that the development was violating the "front yard"

requirement of the zoning ordinance and issued an order to cease and desist all work on the development. The developer appealed to the Board of Zoning Adjustment which approved his application based on a plot plan, and this ruling was affirmed by the trial court. The Kansas City Court of Appeals affirmed, in part because of the fact that it was "not suggested that the apartments as constructed did not comply with the original plans. Under these facts, we cannot declare it to have been a self-imposed hardship." *Stockwell*, at 792[5–11].

In *Taylor*, SRB Properties (SRB), which owned a lot in a planned unit development shopping center, sought and received a permit to construct a free standing sign. After the permit was issued, the sign was erected at a cost of $7,000.00. About three months later the city revoked the sign permit on the basis that under the formula established by the zoning ordinance governing the size of signs for multi-tenant buildings and shopping centers, the sign was too large by slightly more that six square feet. SRB appealed to the Board of Zoning Adjustment, which upheld the revocation and denied SRB's request for a variance. The Western District reversed, stating, in part, that "the unique character of SRB's property is part of a city approved planned unit development for which the . . . covenants and restrictions provide no guidelines for a sign. The property is classified as part of a shopping center for sign purposes. Because of the vagueness of the ordinance, owner SRB legitimately applied for and was granted a sign based on the frontage requirements of the ordinance." *Taylor*, at 144[2]. In addition, the court relied on the fact that "a representative of the city candidly admitted it was the City's error in approving a 99 square foot sign when only [a] 92.73 square foot sign was proper. . . . SRB has proceeded under the ordinance, and it is the City's ordinance that has caused the problem. Under the facts and circumstances of this case, the variance of SRB should have been granted." *Id.*, at 144[6].

It is not clear, however, that *Stockwell* and *Taylor* assist appellants, because in each of these cases actions were taken and invest-ments were made in conformity with the plans upon which the city issued the permits. Here, it is not clear from the record that the same situation is present. The record does not indicate that the permit was granted based on approved plans indicating that the house would be built with the east wall encroaching on the setback requirement. Here, it appears from the record that the approved plans were in compliance with the applicable setback requirements, but due to contractor error the east wall encroached on the setback requirement. In short, the record does not indicate, as it did in *Stockwell* and *Taylor*, that reliance on a permit issued by the City contributed to the cause of the violation. Thus, on the record presented, *Stockwell* and *Taylor* do not assist appellants.

■ Respondents rely on *Wehrle v. Cassor*, 708 S.W.2d 788 (Mo.App.1986), and *Hutchens v. St. Louis County*, supra, 848 S.W.2d 616. In both *Wehrle* and *Hutchens*, the ordinance language in question allowed for practical difficulties resulting only from irregular shape of the lot or topographical conditions of the land. Here, however, the ordinance at issue contains language not contained in the *Wehrle* and *Hutchens* ordinances. Here, the ordinance authorizes the Board to grant a variance where "by reason of exceptional narrowness, shallowness, shape of topography, *or other extraordinary or exceptional situation or condition of a specific piece of property*, the strict application of any regulation of this title would result in peculiar and exceptional difficulties *to or peculiar and exceptional undue hardship upon the owner of the property*. . . ." (Emphasis added.) The emphasized phrase has been construed so as to allow the Board to look at criteria other than the physical characteristics of the property. *Karelitz v. Soraghan*, 851 S.W.2d at 89[3, 4]. In *Karelitz*, a hospital sought a variance from setback requirements in order to provide sufficient parking space for a new building. The Kirkwood Board of Adjustment granted the variance and the trial court upheld the decision. This court stated:

The phrase in Kirkwood's ordinance "other extraordinary or exceptional situa-

tion or condition of a specific piece of property" evinces an intent to cover other situations of practical difficulties or of undue hardship to the landowner. Although the phrase follows language which relates to the physical characteristics of the property, the phrase indicates that Board may look at criteria other than the physical characteristics of the property. The language therefore broadens, rather than restricts, the factors Board may consider in granting a variance.

We held that the hospital had adequately established that it would encounter practical difficulties if it complied with the requisite setback because the alternative to securing a variance was for the hospital to tear down either some homes it owned in the neighborhood or a maintenance shed which was of value and use to the hospital. *Id.*, at 90[8, 9].

Since § 26.32.080 contains similar language as that found in the Kirkwood ordinance, under the ruling in *Karelitz* the Board may consider evidence of practical difficulty resulting from factors other than the physical characteristics of the property. The question, then, is whether the Board's finding of practical difficulty as the basis for granting the variance is supported by competent and substantial evidence.

 Local ordinances may further define the power of the Board to grant a variance, but they may not conflict with the statutory criteria and how courts have interpreted those criteria. *Matthew v. Smith*, 707 S.W.2d at 415. Here, the conditions set out in § 26.32.080 essentially track the burden of proof requirements of the statute. The record on appeal indicates that it would be a financial hardship for Smith to conform his house to the setback requirements because of the physical impracticality and economic impact of moving the east wall of his house which contains the quarters for the mechanical, electrical and plumbing installations in the residence. However, the record is insufficient to determine whether the permit was granted based on plans which did not conform to the zoning requirements, or whether there was error in the placement of the house deviating from plans drawn in compliance with the setback requirements. Thus,

the evidence as reflected in the record on appeal is insufficient to find that Smith met the burden of proof under § 89.090, or to support findings of the conditions which the Board is required to find under § 26.32.080. The Board merely found that Smith "has made minor changes that has [sic] expanded the fireplace from 24 inches to 27½ inches and the roof overhang from 24 inches to 26¼ inches," and summarized statements made by Smith's attorney and Mr. Arens. The Board did not address the one foot setback encroachment alluded to by Smith's attorney.

The decision of the trial court is affirmed. Therefore, the Board's decision is reversed and the cause is remanded to the Board for further proceedings in accordance with this opinion.

Judgment affirmed.

GARY M. GAERTNER, C.J., and PUDLOWSKI, J., concur.